Lames JUNIOR, Plaintiff-Appellant,

v.

TEXACO, INC., Defendant-Appellee.

No. 81–2522

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 7, 1982.

Greg Frazer, Houston, Tex., for plaintiff-appellant.

James D. Garrison, Houston, Tex., for defendant-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Lames G. Junior filed a complaint against his former employer, Texaco, Inc., under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981, alleging racial discrimination in employment practices. Junior, a black male, alleged that although he resigned his clerical position after six years on the job, his resignation was, in reality, a constructive discharge. At the close of Junior's presentation of evidence the court granted Texaco's motion to dismiss filed pursuant to Fed.R.Civ.P. 41(b). Junior's appeal challenges the trial court's finding and conclusion that his resignation was not a constructive discharge. Finding no error, we affirm.

### Facts

Employed as a junior clerk in August of 1972, Junior held various clerical positions until December of 1977 when he was assigned to the Consignee Sales Verification Group in Texaco's Houston office. In the spring of 1978 Junior asked his supervisor about a promotion and title change. The other seven members of his group, all white, were senior clerks. Junior stated that his experience and evaluations justified such a promotion. He was told the matter would be looked into. On August 25, 1978 Junior asked his immediate supervisor whether he had any information about the earlier request. The supervisor responded in the negative but offered to pursue the matter. Shortly thereafter Junior was called into the office of the assistant personnel manager for a periodic job performance evaluation which reported Junior's performance as less than satisfactory in four of six categories.[1]

Junior's protest of the low evaluation was followed by a discussion of the quantity of his work. Junior was told that he would be given an opportunity for a reappraisal in a few months,[2] that they should "try again." No one suggested to Junior that he was going to be fired. Junior returned to his desk, wrote out a resignation giving two weeks notice, and delivered it to his supervisor.

Junior continued working the following week. After receiving his father's sage advice that one should not voluntarily leave a job before another is in hand, Junior asked the assistant personnel manager about the possibility of withdrawing his resignation. He was informed that the paperwork on his resignation had been processed and his position had been filled. Junior left the job in accordance with his resignation notice. Thereafter he complained to the Equal Employment Opportunity Commission and, after receipt of the requisite notice, filed the instant suit.

### Standard of Review

Junior challenges the finding that he was not constructively discharged. The constructive discharge doctrine, first developed in unfair labor practice cases and more recently applied to employment discrimination actions, serves as a legal substitute for the discharge element of a prima facie case of discrimination.[3]

---

1. Junior's most recent previous evaluations had reflected that his work was satisfactory or better, though evaluations made early in his employment tenure had rated him as below satisfactory in some categories. Junior had also been counseled about many late arrivals to work, which he had ascribed in written tardiness reports to oversleeping or poor Houston bus service. One such report of a late arrival was made two days after his request for a promotion.

2. The appraisals were generally done at yearly intervals.

3. A prima facie case of discriminatory discharge under Title VII requires a showing (1) that the employee was a member of a protected class, (2) that he was qualified for the job from which he was discharged, (3) that he was discharged, and (4) that the employer filled the position with a non-minority member after the discharge. *Marks v. Prattco, Inc.*, 607 F.2d 1153 (5th Cir. 1979).

We spoke of constructive discharge in *Young v. Southwestern Savings and Loan Association*, 509 F.2d 140, 144 (5th Cir. 1975):

> The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

A constructive discharge results when job conditions are " 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir. 1980) (*quoting Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir. 1977)). The focus is upon the reasonable reaction of the employee; it is not necessary to show that the employer subjectively intended to force a resignation.

The certainty which prevails in our standard for determining constructive discharge is not matched by like certainty in the standard for appellate review of the trial court's resolution of the question. The *Bourque* court "appl[ied] the facts as found by the district court to the law of constructive discharge" and held that "[a]s a matter of law the facts involved here do not constitute constructive discharge." 617 F.2d at 64. In *Calcote v. Texas Educational Foundation*, 578 F.2d 95 (5th Cir. 1978), we used "conclusion of law" language. In *Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 372 (5th Cir. 1981), we cited Fed.R.Civ.P. 52(a) and observed that the "court's finding that plaintiff was constructively discharged is supported by the evidence . . . ."

The recent teachings of the Supreme Court are pertinent. In *Pullman-Standard v. Swint*, —— U.S. ——, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), the Court cautioned against the drawing of distinctions, at the appellate level, between ultimate facts and basic or subsidiary facts, for Rule 52(a) "does not divide facts into categories." 102 S.Ct. at 1789. In the *Swint* case, the Court held that a trial court's finding of a lack of discriminatory intent was a finding of fact reviewable only under the clearly erroneous rule. The Court's admonition did not extend to situations involving mixed questions of law and fact "of the kind that in some cases may allow an appellate court to review the facts to see if they satisfy some legal concept of discriminatory intent." 102 S.Ct. at 1790.[4]

### The Standard Applied

Today we avoid the Serbonian bog which appears to encircle the inquiry whether constructive discharge poses solely a question of fact or a mixed question of fact and law. On the record before us it matters not whether we view the trial judge's conclusion that Junior was not constructively discharged as a fact subject to the clearly erroneous rule or a mixed question which might permit broader appellate review. Looking through either appellate prism, we find no reversible error. Applying the rubric expressed in *Young* and *Bourque* to the established facts leads inexora-

---

The Supreme Court outlined the methodology of proof in Title VII disparate treatment cases in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see Coleman v. Braniff Airways, Inc.*, 664 F.2d 1282, 1284 (5th Cir. 1982). Disparate treatment claims brought under section 1981 are subject to the same treatment. *See Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798, 818 (5th Cir. 1982).

Dismissal under Rule 41(b) is appropriate when the plaintiff has not made a prima facie case. *See Crawford v. Western Electric Co., Inc.*, 614 F.2d 1300, 1311 (5th Cir. 1980).

4. The Court then spoke to mixed questions:

> We need not, therefore, address the much-mooted issue of the applicability of the Rule 52(a) standard to mixed questions of law and fact—i.e., questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated. There is substantial authority in the circuits on both sides of this question.

—— U.S. at —— n.19, 102 S.Ct. at 1790 n.19.

bly to the conclusion that Junior's departure did not constitute a constructive discharge.

The record makes manifest that Junior's work environment was far from intolerable. Junior attested to his identification with his employer and to the fact that he enjoyed his work and work environ. Since the August 25 work evaluation was the precipitant for the resignation, our inquiry must focus on whether Junior's resignation was a reasonable reaction under all prevailing circumstances. We must determine whether Junior reasonably could conclude that he had no meaningful choice but to resign.

The evidence reflects that Junior's periodic appraisals had fluctuated. Generally, his performance earned satisfactory ratings. The August 25 report was mixed. He was credited with having a good working knowledge of his job and satisfactory personal job characteristics. Work quantity was considered fair and work quality was acceptable. As to initiative, he was "inclined to take things easy." In the final category, attendance, he received the lowest possible rating: "Excessive time loss." Evidence established that Junior was frequently late for work, having been "substantially late to work nine times in ninety (90) days that were reported and some thirty (30) times in ten months that were unreported." It was only in this area that the August 25 appraisal substantially varied from earlier rankings.

The district court's conclusion that the evaluation "was not arbitrary, capricious, or unreasonable, but merely showed room for improvement" is amply supported by the record. Thus, while Junior had reason for concern about how his work habits were perceived, the August evaluation was neither extremely low nor entirely unjustified.

Nor should the evaluation be taken as a harbinger of his dismissal. No one suggested to Junior that he would be fired. It was apparent that improvement was expected. One supervisor took a "wait and see" attitude. Junior was advised that they would re-examine the matter in three months when he would be given an opportunity for another appraisal. Significantly, the company provided a procedure for the appeal of an unjustified job performance appraisal. Junior chose not to initiate the administrative appeal process.

Junior testified that he interpreted the August 25 appraisal as tantamount to a dismissal. We are not persuaded. Junior offered the testimony of a co-worker who corroborated his personal interpretation. That co-worker, however, had once received a less than satisfactory employment appraisal but had remained with Texaco. She appealed the appraisal and subsequently received higher evaluations and pay increases. Junior received low ratings in 1975. He improved his performance and his ratings likewise improved, as did his pay and job assignment. Junior's conclusion that the low appraisal was equivalent to a pink slip is not well-founded.

■ The remaining question is whether the low appraisal resulted in such an intolerable work situation that Junior's resignation was effectively mandated. A constructive discharge can be found either where the employment action amounts to a firing in all but name or where the job situation—despite the employer's purpose or motive—is simply unbearable to the reasonable employee. *See Bourque*, 617 F.2d at 65 ("analysis proceed[s] upon an examination of the conditions imposed"). Junior's chances for advancement may have been hampered by the low appraisal, especially for the short run. But the co-employee's testimony, as well as Junior's own experience in 1975, belies a finding that the evaluation at that stage was permanent or irreversible.

Junior was entitled to resign from Texaco for any reason he deemed sufficient. He cannot, however, convert that resignation into a congressionally forbidden constructive discharge on the facts presented by this record.

The district court is AFFIRMED.