William J. GUTHRIE,
Plaintiff-Appellee/Cross-Appellant,

v.

J.C. PENNEY COMPANY, INC.,
Defendant-Appellant/Cross-Appellee.

No. 85–4871
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1986.

Peyton S. Irby, Jr., Christopher E. Hoyme, Jackson, Miss., Nelle M. Funderburk, James Allan Smith and Paul R. Beshears, Atlanta, Ga., for defendant-appellant/cross-appellee.

Williams, Glover, Walton & McAlilly, Stephen L. McAlilly, David Williams, Meridian, Miss., for plaintiff-appellee/cross-appellant.

Before REAVLEY, JOHNSON and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

Defendant J.C. Penney Company appeals from a jury trial awarding back pay, liquidated damages, reinstatement, attorney's fees, and costs to one of its employees under the Age Discrimination in Employment Act (ADEA). 29 U.S.C. §§ 621–634. The employee, William J. Guthrie, appeals the dismissal of his pendant state claims for the intentional infliction of mental distress and breach of a fiduciary duty. The issues raised by both appeals are: (1) whether the jury had sufficient evidence to find that J.C. Penney violated the ADEA; (2) whether the trial judge erred in refusing to order a new trial after the admission of allegedly prejudicial evidence; (3) whether the award of liquidated damages was justified and whether damages should have been reduced by the retirement benefits that Guthrie received; (4) whether the trial court properly dismissed the intention-

al infliction of mental distress claim; and (5) whether the court properly dismissed the breach of fiduciary duty claim. For the following reasons, we affirm the judgment of the district court as to all claims, but remand for a recalculation of damages.

## I. FACTS AND PROCEDURAL HISTORY

Guthrie began working for J.C. Penney ("Penney") in 1964, after more than seventeen years at another department store chain. He took over management of the Meridian, Mississippi, store, in Penney's Southeastern Region, in 1973.

Penney had a written policy that all store managers retire at age sixty. In 1978, the Company sent out a letter announcing that it had changed this policy to conform with changes in the ADEA, so that all employees could work to age seventy. Guthrie testified that he was relieved because, with five children, the youngest in junior high school, he feared that he could not support his family on retirement pay and hoped to work as long as he could.

Guthrie contends that Penney's unwritten policy remained one of forcing all managers out at age sixty. The jury heard evidence that, beginning just before Guthrie's sixtieth birthday in the spring of 1979, the Company repeatedly inquired into his retirement plans. Penney listed Guthrie as retired on its records, and took ten months to correct the error. Guthrie's date of birth was circled on his appraisal forms, and a supervisor handwrote "When?" next to the parts of the forms covering retirement. District Manager Stiglets sent Guthrie a humorous poem on the sexual problems of old age with the notation, "I think it just fits you!" Guthrie testified that the Regional Personnel Manager, Woodruff, announced that the Company preferred its managers to retire at age sixty, and threatened to make his job difficult if he did not do so. Woodruff testified that he did not remember making those statements.

Penney had a manager rating scale from one to five. One was the highest rating;

three corresponded to average or satisfactory performance; four represented "improvement needed to meet requirements" and often meant the first step toward termination. In 1977, Guthrie received a two rating; until the end of 1981, he received three ratings. In each of those years, he received merit pay increases. Under Guthrie's management, the Meridian store stayed at the top or near the top in sales and profits, compared with other stores in the district. It won several sales contests. A professional shoppers group hired by Penney gave it the highest rating. In 1982, Guthrie was the only store manager over sixty in his district, and one of only twenty-one managers over sixty in Penney's 1,700 stores nationwide.

In February 1982, a reorganization placed Guthrie under a new District Manager, James M. Moore. Soon after, Moore made a visit to Guthrie's store and reprimanded him in front of his subordinates for not setting up sale displays the night before a sale. Guthrie responded that setting up the displays in the evening would force him to sell merchandise at sale prices to evening customers, and that ample time to set up remained between 7:00 a.m., when employees arrived, and 10:00 a.m., when the store opened. In criticizing Guthrie before his employees, Moore disregarded recommendations of Penney's District Manager's Manual.

In June 1982, Moore made his first formal visit to the store. Witnesses disagreed on whether Guthrie was notified of this visit in advance, as required by the Company manual. During the visit, Moore continued to criticize Guthrie in front of his staff. Moore made decisions normally reserved for the store manager, such as rearranging staff duties and changing employee ratings. He examined merchandise records and concluded that the store was out of stock in too many items. Guthrie and other employees testified that the store was converting from a manual to a computerized stock control system and that the items were actually in stock. Moore, however, refused to take the switchover into account. Moore made several other criticisms that Guthrie's witnesses characterized as minor problems found at most stores.

As a result of this visit, Moore lowered Guthrie's rating to a four and set new performance goals. Several of his subordinates testified that morale was low in the store because of Moore's visits, and one testified that she resigned because of them. Guthrie believed that he would be fired if he did not meet Moore's goals, and that the goals were impossible to meet, during remodeling and inventory-system changeover. In August 1982, he resigned, effective October 1. He spent several months looking for a job, finally obtaining one in Idaho for a substantially lower salary.

Guthrie's replacement, Lawrence Mason, was forty-seven years old. Although sales and profit figures fell after he took over the store, he received a three rating and was allowed to run the store without interference.

Guthrie sued under the ADEA and added pendant state claims for breach of fiduciary duty and intentional infliction of emotional distress. Eleven days before trial, Penney moved to amend its answer to include a statute of limitations defense to the claim for emotional distress. The jury heard testimony on the state claims, but, at the close of the evidence, the judge granted a directed verdict for the defendant on both. On his ADEA claim, Guthrie was awarded back pay, liquidated damages, attorney's fees, costs and reinstatement.

## II. SUFFICIENCY OF THE EVIDENCE OF AGE DISCRIMINATION

When a plaintiff in an ADEA case cannot present direct evidence of discrimination, the courts have developed a three-part test modeled on the one used by Title VII plaintiffs. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). First, the plaintiff must make a prima facie case by proving that he was in the age group protected by the Act (forty to seventy years old), he was qualified for the position, he was dis-

charged, and he was replaced by a younger employee. In the second stage, the burden shifts to the employer to produce evidence that dismissal was due to a business reason other than age. At the third stage, the plaintiff can prevail by showing that the articulated reason was a pretext. *Sherrod v. Sears, Roebuck & Co.*, 785 F.2d 1312, 1314–16 (5th Cir.1986); *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 565–66 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984); *Reeves v. General Foods Corp.*, 682 F.2d 515, 520–24 (5th Cir.1982). Penney attacks the sufficiency of the evidence supporting the jury's verdict for Guthrie at two points: constructive discharge and the pretextual nature of Penney's business reasons.

Factual findings in employment discrimination cases are reviewed on the same standard as in other cases. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *Sherrod*, 785 F.2d at 1314. Consequently, the Court will not overturn the jury verdict unless it is not supported by substantial evidence. *Reeves*, 682 F.2d at 518–19; *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc). An employee can prove constructive discharge by showing that his employer created conditions so intolerable that "a reasonable person in the employee's shoes would have felt compelled to resign." *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir.1980), *quoting Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977). *See also Kelleher v. Flawn*, 761 F.2d 1079, 1086 (5th Cir.1985); *Shawgo v. Spradlin*, 701 F.2d 470, 481 (5th Cir.), *cert. denied*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 345 (1983); *Junior v. Texaco, Inc.*, 688 F.2d 377 (5th Cir.1982).

The inquiry focuses on the employee's state of mind, and the employer's intent in creating the allegedly intolerable conditions is irrelevant at this stage. *See, e.g., Kelleher*, 761 F.2d at 1086; *Shawgo*, 701 F.2d at 481 n. 12; *Junior*, 688 F.2d at 379. However, the test remains objective, because it turns, not on the plaintiff's actual reaction, but on the reaction of a "reasonable employee" in his position. *Id.*

In the instant case, the jury did hear substantial evidence supporting constructive discharge. All of the witnesses to District Manager Moore's two visits testified that he strongly criticized Guthrie in front of his staff. Guthrie and several of his staff members stated that morale was low and that Guthrie's authority suffered as a consequence. Moore's downgrade of Guthrie from a three to a four was a recognized first step toward dismissal, although witnesses disputed how long Guthrie had to make improvements before he would be fired. Guthrie testified that he believed it impossible to improve so long as the store was operating with a reduced staff, breaking in a new inventory control system, and undergoing remodeling. The jury had substantial evidence to find this perception reasonable, as well as Guthrie's conclusion that termination was inevitable.

Secondly, Penney asserts that it acted as it did for business reasons, and that Guthrie did not prove these reasons to be pretextual. Specifically, Penney says that its repeated inquiries about Guthrie's retirement plans were due to the need to anticipate staff vacancies; that Moore's decision to criticize and downgrade Guthrie formed part of a general "get tough" attitude on his part; and that it had the right to assign little weight to the sales and profit performance of Guthrie's store. Penney is correct in pointing out that the ADEA is not a license to second-guess legitimate business judgments. *Thornburgh v. Columbus & Greenville Railroad Co.*, 760 F.2d 633, 645–46 (5th Cir.1985). Thus, the courts would not interfere if Penney in fact decided to ignore sales and profit performance in evaluating store managers. However, the question here is what Penney's motive actually was, not what it could have been. In reaching this determination, the jury is entitled to weigh the credibility of witnesses and to disbelieve self-serving testimony. *Thornburgh*, 760

F.2d at 645–46; *Elliott,* 714 F.2d at 564; *Reeves,* 682 F.2d at 524.

In this case, the jury could have believed that Penney's need to plan for vacancies motivated its first inquiry into Guthrie's retirement plans. However, the jury could also have believed that the later, repeated inquiries were unnecessary and constituted intentional harassment. Moreover, the jury heard considerable evidence tending to show that Moore singled out Guthrie for criticism and applied tougher standards to him than to his younger colleagues. For example, Guthrie's younger successor experienced the same problems and received a three rating. While Penney may choose to downplay sales and profit performance in evaluating a manager, its own company manual lists them as key factors. Finally, the jury may have chosen to believe Guthrie's testimony that he was told that the Company wanted him to retire at age sixty, over Penney's witnesses who testified to the contrary.

■ In sum, the jury heard substantial evidence from which to conclude that Guthrie met his burden of showing that he was constructively discharged and that Penney's stated reasons for doing so were pretextual.

## III. *PREJUDICIAL EVIDENCE*

During the trial, Guthrie and his wife testified that his mental and physical health deteriorated under the strain of the last months before his retirement. This evidence was clearly relevant to Guthrie's pendant state claim for intentional infliction of emotional distress. However, the trial court dismissed that claim at the close of the evidence, out of the presence of the jury. The jury instructions made no reference to the emotional distress claim or the evidence supporting it. Instead, the trial judge correctly instructed the jury on the types of evidence that are relevant to an ADEA claim. Penney did not request that the jury be told to disregard emotional distress evidence. However, after the verdict Penney did move for a new trial on the ground that the admission of that evidence

prejudiced and confused the jury. The trial court denied the motion.

■ Damages for pain and suffering are not recoverable under the ADEA, and evidence concerning such suffering is not admissible in a case brought only under the Act. *Walker v. Petit Construction Co.,* 605 F.2d 128, 131 (4th Cir.1979), *modified on other grounds,* 611 F.2d 950 (1979); *Haskell v. Kaman Corp.,* 743 F.2d 113, 121 (2d Cir.1984); *Hill v. Spiegel, Inc.,* 708 F.2d 233, 236 (6th Cir.1983). Some district courts outside this Circuit have chosen to dismiss pendant state claims involving emotional distress so as not to confuse a jury trying an ADEA claim. *See, e.g., Kempe v. Price Gardner, Inc.,* 569 F.Supp. 779 (E.D. Mo.1983); *Balmer v. Community House Association,* 572 F.Supp. 1048 (E.D.Mich. 1983). The Sixth Circuit has reversed a trial judge who allowed the jury to hear doubly irrelevant evidence of emotional distress *after discharge,* and the Second Circuit has reversed in a case involving impermissible evidence of emotional distress *and* many other errors. *Hill,* 708 F.2d at 236 (6th Cir.1983); *Haskell,* 743 F.2d at 121 (2d Cir.1984). The Fourth Circuit held that the admission of mental anguish evidence did not alone require a new trial. *Walker,* 605 F.2d at 131.

■ In the instant case, the evidence on Guthrie's physical and mental suffering was relevant when offered. The district court did not clearly abuse the wide discretion that it enjoys in deciding whether the jury has been so confused that a new trial is needed. *Dawsey v. Olin Corp.,* 782 F.2d 1254, 1261 (5th Cir.1986). Moreover, Penney chose not to request the less drastic remedy of an explicit instruction to the jury. Parties objecting to jury instructions must do so before the verdict. Fed.R. Civ.P. 51. A party attacking jury instructions for the first time on appeal must demonstrate "plain error." *Rodrigue v. Dixilyn Corp.,* 620 F.2d 537, 540–41 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). Penney cannot show that the trial judge's instruc-

tions, which correctly stated what evidence is relevant to an ADEA claim, were plainly erroneous merely because they did not also recite what evidence is *not* relevant.

## IV. *ADEA DAMAGES*

The trial court awarded Guthrie reinstatement, costs, attorney's fees, and $179,-550 in back pay. It also granted Guthrie "liquidated damages" equal to the back pay award, as authorized by the statute. 29 U.S.C. § 626(b) (1982). The Supreme Court has held that a jury can award double back pay as liquidated damages if an employer acted willfully, either knowing that it was violating the ADEA or showing "careless disregard" of whether it was or not. *Transworld Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 624–25, 83 L.Ed.2d 523 (1985).

■ Penney argues that the jury did not have substantial evidence to find willfulness. However, the jury heard evidence that Penney had a previous early retirement policy, evidence that some managers considered that policy still in effect, and evidence that Guthrie was subjected to several years of pressures not imposed on younger store managers. We decline to disturb the factual finding of willfulness.

■ Penney also protests the district court's failure to deduct Guthrie's retirement and social security benefits from his back pay award. The ADEA empowers the district court to grant "such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter," *i.e.*, to discourage age discrimination and to compensate its victims. 29 U.S.C. § 626(b). Most courts have refused to deduct such benefits as social security and unemployment compensation from ADEA awards. *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 736 (5th Cir.1977); *Maxfield v. Sinclair International*, 766 F.2d 788, 793–94 (3d Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *McDowell v. Avtex Fibers, Inc.*, 740 F.2d 214, 215–17 (3d Cir.1984), *vacated and remanded on other grounds*, 469 U.S. 1202, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985); *Wise v. Olan Mills, Inc. of Texas*, 495 F.Supp. 257 (D.Colo.1980). These decisions follow from the common law "collateral source rule," according to which the defendants may not benefit from payments made to the plaintiff by third parties. *See, e.g.*, *Bourque v. Diamond M. Drilling Co.*, 623 F.2d 351 (5th Cir.1980). Although employers do contribute to the social security and unemployment insurance fund, the rule still applies because they do so in support of an independent, legislatively-mandated social policy. *McDowell*, 740 F.2d at 217; *Equal Employment Opportunity Commission v. Sandia Corp.*, 639 F.2d 600, 624–25 (10th Cir.1980). Interpreting the section of the NLRA that provided the model for the ADEA's damages provision, the Supreme Court has held:

> To decline to deduct state unemployment compensation benefits in computing back pay is not to make the employees more than whole, as claimed by respondent. Since no consideration has been given or should be given to collateral *losses* in framing an order to reimburse employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees may have received.

*National Labor Relations Board v. Gullett Gin Co.*, 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95 L.Ed. 337 (1951) (emphasis in original). While district courts' decisions to deduct social security and similar benefits have been upheld as exercises of discretion, no appellate court has reversed a district court that refused to make a deduction. *Equal Employment Opportunity Commission v. Wyoming Retirement System*, 771 F.2d 1425 (10th Cir.1985); *Orzel v. City of Wauwatosa Fire Department*, 697 F.2d 743, 756 (7th Cir.), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983); *Naton v. Bank of California*, 649 F.2d 691, 699–700 (9th Cir.1981). In the instant case, the trial court did not abuse its discretion in refusing to deduct social security.

■ Penney's retirement plan presents a more difficult problem. While the Third

Circuit has refused to set off pension plan benefits, other circuits have held that such benefits, coming from the employer, are not collateral and should be set off. *McDowell,* 740 F.2d at 217 (no set-off for pension benefits); *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76 (2d Cir.1983) (set-off for lump-sum pension payment); *Fariss v. Lynchburg Foundry,* 769 F.2d 958, 966–67 (4th Cir.1985); *Sandia Corp.,* 639 F.2d at 626–27 (set off for "lay off allowances"). The only Fifth Circuit case is not directly on point because it involved disability payments and the defendant-employer was the United States government. This Court held that "the collateral source rule does not apply when the collateral source is the defendant," and ordered a set-off. *Smith v. Office of Personnel Management,* 778 F.2d 258, 263 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986). Applying the rationale of that case and looking to the practice of the majority of the other circuits, we hold that Guthrie's back pay award should be reduced by payments received from Penney's retirement fund. We remand to the district court to separate these amounts from nondeductible social security benefits.

## V. *DISMISSED STATE CLAIMS*

 The trial court dismissed Guthrie's Mississippi claims for intentional infliction of emotional distress and breach of fiduciary duty. Guthrie first protests the court's decision to allow Penney, eleven days before the trial, to amend its answer to add a statute of limitations defense to the emotional distress claim. The Federal Rules of Civil Procedure allow amendments to pleadings and provide that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The trial court's decision to grant or deny leave to amend will be overturned only for abuse of discretion. *Jamieson By and Through Jamieson v. Shaw,* 772 F.2d 1205, 1208 (5th Cir.1985). The district court may deny leave to amend only if it finds "a substantial reason" such as dilatory purpose or unfair prejudice to the opposing party. *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 546 (5th Cir.

1983); *see also Jamieson,* 772 F.2d at 1208–09; *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.,* 690 F.2d 1157, 1163 (5th Cir.), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1982).

 While the defendant in the instant case should have brought his statute of limitations defense forward sooner, Guthrie has not shown that he suffered any prejudice because of the delay. Indeed, the defense raised no new factual issues and the eleven days remaining before trial should have been enough to research the legal issues involved. The trial judge did not believe that Penney raised the defense merely to delay. Finally, the prejudice to Penney, had it been precluded from utilizing the statute of limitations, outweighs any prejudice to Guthrie. The court did not abuse its discretion in allowing the amendment.

The district court determined that Guthrie's emotional distress claim was governed by the Mississippi one-year statute of limitations for "assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace...." Miss.Code Ann. § 15–1–35 (1972). Accordingly, the court dismissed the claim. Guthrie contends that Mississippi's residual limitation of six years should apply. Miss.Code Ann. § 15–1–49 (1972). Although the issue is a fully reviewable question of law, this Court gives weight to the opinion of a district judge familiar with the law of his home state. *Halpern v. Lexington Insurance Co.,* 715 F.2d 191, 192 (5th Cir.1983).

The Mississippi case recognizing a cause of action for intentional infliction of emotional distress is silent on which statute of limitations applies. *Lyons v. Zale Jewelry Company,* 246 Miss. 139, 150 So.2d 154 (1963). However, that case involved debt collection, and a case with facts similar to *Lyons* was held to be a "menace" case under the one-year statute of limitations. *Dennis v. Travelers Insurance Co.,* 234 So.2d 624, 626 (Miss.1970).

 Guthrie argues that the Mississippi legislature intended section 15–1–35 to cov-

er only the torts specifically listed, relegating all other torts to the catch-all provision. However, the case that Guthrie cites holds only that section 15–1–35 is confined to torts "of the *type* enumerated." *Southern Land & Resources Co. v. Dobbs,* 467 So.2d 652, 654 (Miss.1985), citing *Bush v. City of Laurel,* 234 Miss. 93, 105 So.2d 562 (1958) (emphasis added). Thus, this Court has held that section 15–1–35 covers abuse of process, even though that tort is not mentioned there by name. *Suthoff v. Yazoo County Industrial Development Corp.,* 722 F.2d 133 (5th Cir.1984), *cert. denied,* 467 U.S. 1206, 104 S.Ct. 2389, 81 L.Ed.2d 347. The district court's reasoning that intentional infliction of emotional distress is the same *type* of tort as menace and therefore covered by the one-year statute of limitations is persuasive. We affirm the district court's determination that Guthrie's emotional distress claim is time-barred.

 Finally, Guthrie argues that his state claim for breach of fiduciary duty should have been allowed to go to the jury. He cites a Mississippi diversity case involving a suit by a franchisee against a franchisor for the proposition that "[t]he existence or nonexistence of a fiduciary relationship between parties is a question of fact for the jury." *Carter Equipment v. John Deere Industrial Equipment,* 681 F.2d 386, 390 (5th Cir.1982). However, in that case the plaintiff had shown that, under Mississippi law, a franchising contract sometimes created fiduciary duties and sometimes not. *Id.* at 390. Hence, the jury was needed to decide if the facts in that case created a fiduciary relationship. In the instant case, Guthrie has been unable to cite any Mississippi precedents finding fiduciary duties in an employment relationship. On the contrary, Mississippi follows the rule of employment at will. *Kelly v. Mississippi Valley Gas Co.,* 397 So.2d 874 (Miss.1981). Thus, there were no factual questions for the jury to resolve, and the district court properly dismissed the claim.

## VI. *CONCLUSION*

The jury's verdict in favor of Guthrie on his age discrimination claims is supported by substantial evidence, as is its finding that Penney's acts were sufficiently willful to trigger liquidated damages. The trial court did not err in refusing to order a new trial because of the admission of evidence of Guthrie's pain and suffering, nor did it err in dismissing his claims for emotional distress and breach of fiduciary duty. The case must be remanded, however, to deduct the payments that Guthrie received from Penney's pension plan from his back pay and liquidated damages award.

REMANDED.