UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

NO. 90-5646

---

H. RON STEPHENS,

Plaintiff-Appellee,

versus

THE C.I.T. GROUP/
EQUIPMENT FINANCING, INC.

Defendant-Appellant.

---

Appeal from the United States District Court
for the Western District of Texas

---

(March 23, 1992)

Before THORNBERRY, GARWOOD, and DAVIS, Circuit Judges.

THORNBERRY, Circuit Judge:

In this age discrimination case, the district court entered judgment on the jury's verdict awarding the plaintiff-appellee, Ron Stephens, $135,500 in damages, and the district court awarded Stephens an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b). The defendant-appellant, CIT Group/Equipment Financing, Inc. (CIT), appeals the district court's denial of its motion for judgment notwithstanding the verdict (judgment n.o.v.) and motion for new trial.

Background

Stephens began working for CIT as a senior credit analyst in April 1975 at an annual salary of $14,100. Stephens was promoted to the position of District Sales Manager (DSM), a sales position, in November 1975 with an annual salary of $15,600. Stephens received many salary increases as a DSM; his final annual salary as a DSM was $23,500.

In December 1978, CIT opened a new division in San Antonio, Texas and appointed Stephens to the position of Division Head of the new division. Stephens's annual salary as Division Head started at $25,300. By 1985, Stephens's annual salary as Division Head was $53,500. As a Division Head of CIT, Stephens was responsible for overseeing the operations of the San Antonio Division, including supervision of the Division Operations Manager (DOM), the DSM's, and other staff in the office.

Stephens was demoted from Division Head to DSM on August 27, 1985. Stephens testified that he was not given any reason for the demotion other than the fact that his supervisors, the Regional Manager and the Executive Vice-President of the Western Division, wanted a younger man in the position. On the other hand, CIT's witnesses testified that Stephens was demoted due to his inability to work with the DOM. Stephens also testified that when the Regional Manager and the Executive Vice-President of the Western Division informed him of the demotion to DSM, they told him that his salary would remain the same and that he would be paid bonuses through September as if he were a Division Head. They also asked him to help train the new Division Head. Yet, a few days later,

Stephens was informed that his salary would be reduced to $43,200, the highest salary allowable for a DSM under the company's policy.

Stephens resigned from CIT on September 30, 1985, approximately thirty days after the demotion, and immediately went to work for a competing company, Credit Alliance. On April 10, 1987, Stephens filed an age discrimination complaint with the Equal Employment Opportunity Commission ("E.E.O.C."). On July 29, 1987, Stephens filed a complaint in federal district court alleging that CIT had constructively discharged him based on his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b), and the Fair Labor Standards Act, 29 U.S.C § 216(b). Stephens requested relief in the form of reinstatement, payment of back wages and other unpaid benefits, and attorney's fees.

The case was tried to a jury. In answers to special issues, the jury found that CIT constructively discharged Stephens, that Stephens' age was a determining factor in CIT's decision to constructively discharge him, that CIT acted willfully in constructively discharging Stephens, and that Stephens's damages amounted to $135,500. Pursuant to 29 U.S.C. § 216, the district court awarded an equal amount in liquidated damages based on CIT's willful discrimination. The court also ordered CIT to reinstate Stephens to his former position or an equivalent position.

CIT moved for judgment notwithstanding the verdict or for a new trial. The district court denied CIT's motion and also awarded Stephens attorney's fees in the amount of $49,875. On appeal, CIT asserts that the district court abused its discretion in denying

3

its motion for judgment n.o.v. or new trial. First, CIT argues that it was entitled to judgment n.o.v. because the evidence does not support a finding of constructive discharge. Second, CIT contends that the damage award is excessive and that the district court abused its discretion by not granting a remittitur or a new trial on damages. We affirm the jury's finding that Stephens was constructively discharged but reverse the damage award and remand for a new trial on damages.

CIT also raises the defense of statute of limitations in its reply brief. For reasons discussed below, the statute of limitations defense is not properly before this court.

## II. Analysis

### A. *The Statute of Limitations*

CIT argues in its reply brief that Stephens's claims are time barred because Stephens failed to file a complaint with the E.E.O.C. within the time period required by the Age Discrimination in Employment Act. CIT correctly argues that the notice or filing requirement contained in 29 U.S.C. § 626(d)(2) "is a condition precedent-- . . . in the nature of a statute of limitations--" to filing suit in federal district court. Coke v. General Adjustment Bureau, Inc., 640 F.2d 584, 595 (5th Cir. 1981) (en banc) (holding that the filing requirement is not a jurisdictional requirement but a condition precedent or statute of limitations which can be waived). However, this court cannot properly consider the statute of limitations defense because CIT failed to raise it in their

4

original brief.  "[An] appellant cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in the appellee's brief."  16 C. WRIGHT, A. MILLER, E. COOPER & E. GREESMAN, FEDERAL PRACTICE AND PROCEDURE § 3974 at 428 (1977); see also Light v. Blue Cross and Blue Shield of Alabama, 790 F.2d 1247, 1248 n.2 (5th Cir. 1986) (finding that appellants waived review of an issue by failing to raise it in their original brief); Peteet v. Dow Chemical Co., 868 F.2d 1428, 1437 (5th Cir.) ("We may not review arguments raised for the first time in the appellant's reply brief."), cert. denied sub nom., Dow Chemical Co. v. Greenhill, 493 U.S. 935, 110 S.Ct. 328 (1989).

Additionally, CIT waived the defense of statute of limitations at the trial court level.  In fact, aside from urging a general statute of limitations defense in its answer, CIT never mentioned limitations in  the trial court proceedings:  the statute of limitations defense was not listed as an issue in the pretrial conference or order; CIT did not move for summary judgment based on the statute of limitations defense; CIT did not present evidence on the issue at trial; and CIT did not raise the statute of limitations defense in its motion for judgment n.o.v. or motion for new trial.  By failing to assert the defense in the trial court proceedings, CIT waived the statute of limitations defense.

## B.  The Constructive Discharge

In order to prove a prima facie case of age discrimination, a plaintiff must show, among other things, that he was discharged

from his position. Even if the plaintiff resigned from the position, he can satisfy the discharge element of an age discrimination claim by proving that he was constructively discharged. Junior v. Texaco, 688 F.2d 377, 378 (5th Cir. 1982). This circuit has held that a constructive discharge occurs when the ". . . working conditions are so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign." Bourque v. Powell Electrical Mfg. Co., 617 F.2d 61, 65 (5th Cir. 1980) (quoting Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir. 1977)). The jury found that Stephens was constructively discharged. CIT argues that the evidence does not support a finding of constructive discharge and that the district court erred in denying its motion for judgment n.o.v. on the issue of constructive discharge.

In reviewing the district court's denial of CIT's motion for judgment n.o.v., we must consider all of the evidence in the light most favorable and with all reasonable inferences to Stephens. Jett v. Dallas Indep. School Dist., 798 F.2d 748, 755 (5th Cir. 1986) modified on other grounds, 109 S.Ct. 2702 (1989). "Factual findings in employment discrimination cases are reviewed on the same standard as in other cases. Consequently, the Court will not overturn the jury verdict unless it is not supported by substantial evidence." Guthrie v. J.C. Penney Co., Inc., 803 F.2d 202, 207 (5th Cir. 1986) (citing Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc)).

CIT asserts that Stephens did not face working conditions that would compel a reasonable employee to quit. Upon a careful review of the evidence under the proper standard, however, we think otherwise. A reasonable juror could find that the cumulative effect of CIT's actions made the working conditions so intolerable that a reasonable person would have felt compelled to resign. Therefore, the district court did not err in denying CIT's motion for judgment n.o.v..

The evidence shows that Stephens was demoted from Division Head to DSM, a sales position, and was asked to help train his young successor, Roy Keller. (Tr. at 45-46). As a DSM he had no supervisory duties, and in fact had to report to Keller. (Tr. at 49). He was asked to explain his demotion and introduce Keller as the new boss to the division's biggest client, Holt Machinery. (Tr. at 62-63). He was first told that he alone would handle the Holt Machinery account, but was later informed that "ultimately, [Keller] is Division Manager and will make the decisions on how the account will be handled." (Pl.'s Ex. 4). Stephens, who had formerly supervised the entire San Antonio Division, was also informed that he "was permitted to assist the Credit Department as needed" but that "whenever possible, [he] must have a member of the credit department along as designated by Division Management." (Pl.'s Ex. 4). On top of all this, his salary was reduced from $53,500 to $43,200 after he had been told that there would be no reduction in his salary. Finally, each time CIT imposed a new restraint on Stephens or cut his salary or responsibility, Keller

7

asked him whether he was going to quit his job. (Tr. at 56, 71). The combination of the demotion, the continuing limitations on his salary and responsibility, and Keller's repeatedly asking him whether he was going to quit his job, could make working conditions intolerable for a reasonable person in Stephens's position.

CIT correctly argues that this circuit has held that a "slight decrease in pay coupled with some loss of supervisory responsibilities is insufficient to constitute a constructive discharge." See Jett, 798 F.2d 748 (loss of coaching responsibilities was not so intolerable that a reasonable person would feel compelled to resign); Jurgens v. E.E.O.C., 903 F.2d 386 (5th Cir. 1990). In both Jett and Jurgens, in which the employees claimed to have received discriminatory demotions and constructive discharges, this court found insufficient evidence of constructive discharge, stating that the employer had not harassed the employees after the demotion and the demotions were not a "harbinger of [the employee's] dismissal." Jurgens, 903 F.2d at 392. On the other hand, in Guthrie v. J.C. Penney Co., Inc., 803 F.2d 202 (5th Cir. 1986), this court held that Guthrie, who believed that termination was inevitable, had been constructively discharged. Guthrie, 803 F.2d at 207. Although the evidence is less overwhelming in this case than in the Guthrie case, Stephens reasonably could have believed that his demotion was a harbinger of dismissal. CIT's actions after demoting Stephens could make a reasonable employee believe that he risked termination if he remained on the job. Even if CIT did not plan to terminate Stephens, it certainly had no

8

intentions of promoting him, and the "permanence of [a] demotion is a factor to consider under the constructive discharge analysis . . . ." <u>Jurgens</u>, 903 F.2d at 392. We find that when viewed in the light most favorable to Stephens, sufficient evidence supports the jury's verdict.

*C. Damages*

Before discussing CIT's arguments regarding the excessiveness of the damages awarded, we must first address Stephens's argument that CIT failed to preserve error on damages issues. Stephens maintains that CIT failed to raise the issue of damages in its motion for directed verdict and is therefore precluded by Rule 50 of the Federal Rules of Civil Procedure from raising the issue for the first time on appeal.[1] Stephens's argument is without merit. To support his contention that CIT failed to preserve error on the issue of damages, Stephens cites the portion of the record in which CIT moved for a directed verdict at the close of the plaintiff's evidence. CIT moved for a directed verdict at the close of all evidence, however, and argued that ". . . plaintiff has failed to establish any damages . . . ." (Tr. at 538). CIT also argued in its motion for judgment n.o.v. or new trial that Stephens failed to

---

[1] Actually, Stephens's brief states that CIT is precluded by Rule 50 of the Federal Rules of Appellate Procedure from raising any damages issues on appeal. Since Rule 50 does not exist in the Rules of Appellate Procedure, we assume that Stephens actually means to cite Rule 50 of the Federal Rules of Civil Procedure.

provide sufficient proof of damages.  Therefore, CIT properly preserved the issue of damages for appeal.

CIT advances three separate arguments as to why the district court abused its discretion in denying remittitur or a new trial on damages:  (1) the jury failed to follow the court's instruction to offset interim earnings from the back pay award, making the award excessive as a matter of law; (2) the amounts awarded for lost bonuses and car allowance were speculative and not supported by the evidence; and (3) the district court erred in instructing the jury that the relevant back pay period ran from the date of Stephens's resignation to the date of trial.  Since we reverse the damage award and remand for a new trial on damages based on the court's failure to offset Stephens's interim earnings, we only briefly discuss CIT's other two contentions.

"We review the denial of a motion for new trial for an abuse of discretion." Deloach v. Delchamps, 897 F.2d 815, 820 (5th Cir. 1990).  The district court's denial of CIT's motion for new trial was an abuse of discretion because the damages awarded were excessive as a matter of law.  "Damages are meant to put the plaintiff in the economic position he would have occupied but for the discrimination." Kolb v. Goldring, 694 F.2d 869, 872 (1982). Courts uniformly offset interim earnings from back pay awards in order to make the plaintiff whole, yet avoid windfall awards. See Brennan v. Ace Hardware Corp., 495 F.2d 368, 373 (8th Cir. 1974); Rodriquez v. Taylor, 569 F.2d 1231, 1243 n. 23 (3rd Cir. 1977); Deloach v. Delchamps, 897 F.2d 815, 823 (5th Cir. 1990).  Even

10

though the district court instructed the jury to deduct Stephens's interim earnings from an award of back pay, the jury failed to do so.[2]  Without a reduction for interim earnings, the award was clearly excessive, and the district court abused its discretion in denying CIT's motion for new trial or remittitur.  We therefore reverse the damage award and remand for a new trial on damages. See Whiteman v. Pitrie, 220 F.2d 914, 921 (5th Cir. 1955) (recognizing the appellate court's duty to reverse the district court's denial of motion for new trial when the award is excessive as a matter of law).

We also note that there is no evidence in the record to support Stephens's claim that his lost bonuses equaled $14,000 a year.  Stephens never earned a $14,000 bonus while at CIT and produced no evidence showing that he would have earned such a bonus in the years 1985 through 1990.  The only evidence of past bonuses that Stephens produced showed that he earned $10,357 in 1981, $6,688 in 1982, $0 in 1983, and $3,852 in 1984.  Thus, the jury's award of $14,000 a year in lost bonuses was not supported by the record.

---

[2]  In fact, the jury apparently adopted Stephens's own calculation of his damages which did not offset his interim earnings from the amount he claimed as back pay.  Since Stephens's calculation did not account for his interim earnings, the jury's wholesale adoption of his calculations resulted in an award that was greater than the evidence allowed and the jury reasonably could have found.  See Stapleton v. Kowasaki Heavy Industries, Ltd., 608 F.2d 571 (5th Cir. 1979) (The jury "borrowed" the amount sued for as the proper amount of damages, but the amount sued for was actually "greater than the maximum the jury could find.").

Finally, CIT failed to object to the district court's instruction that the relevant back pay period extended from the date of Stephens's resignation until the date of trial. According to Rule 51 of the Federal Rules of Civil Procedure, "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, . . . ." Fed. R. Civ. Pro. 51. Therefore, review of the instruction by this court is precluded unless the error is so fundamental as to result in a miscarriage of justice." Nowell By and Through Nowell v. Universal Electric Co., 792 F.2d 1310, 1316 (5th Cir.) cert. denied, 479 U.S. 987, 107 S.Ct. 578. We need not address whether this instruction resulted in a miscarriage of justice since we remand on other grounds. We note, however, that damages are "settled and complete" and the back pay period ends, when the plaintiff begins earning more at his new job than he did at the job from which he was discharged. Kolb v. Goldring, 694 F.2d 869, 874 (1st Cir. 1982); Matthews v. A-1, 748 F.2d 975, 978 (5th Cir. 1984). Whether or when Stephens earned more at Credit Alliance than he did at CIT must be determined on remand.

We AFFIRM the jury's finding of constructive discharge and REVERSE the damage award and REMAND for a new trial on the issue of damages.