[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 95-3233 & 95-3367

D. C. Docket No. 94-324-CIV-ORL-19

_____

RAFAEL DOMINGUEZ,

Plaintiff-Appellee,

versus

TOM JAMES COMPANY,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(May 15, 1997)**

Before TJOFLAT, DUBINA and CARNES, Circuit Judges.

CARNES, Circuit Judge:

Raphael Dominguez brought this suit under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et. seq., (the "ADEA"), alleging that the Tom James Company ("the Company") fired him because of his age. After a trial, the jury returned a verdict in favor of Dominguez. The district court denied the Company's motion for a judgment as a matter of law and, alternatively, for a new trial. The Company appeals that denial. We affirm the judgment of the district court. In the course of doing so, we apply our holding in Brown v. A.J. Gerrard Manufacturing Co., 715 F.2d 1549 (11th Cir. 1983) (en banc) (Title VII awards are not subject to reduction by amount plaintiff received in unemployment compensation), to ADEA cases, and extend that holding to encompass Social Security benefits as well.

## I. FACTS AND PROCEDURAL POSTURE

The Company is a men's clothing retailer that provides tailoring services. Raphael Dominguez worked for the Company as a tailor in its Orlando office until he was terminated from that position. At the time of his termination, Dominguez was sixty-five years old and had worked as a tailor his entire adult life. Dominguez began working for the Company in the early 1980's, when he was around fifty-five years old. For the first six and one-half years of his employment with the Company, all went well; Dominguez's tailoring work was entirely satisfactory.

In 1991, David Hester took over the management of the Company's Orlando office. According to the Company, Hester learned

2

when he took over that the quality of Dominguez's work was becoming increasingly less satisfactory. However, Dominguez contends that he maintained a very high quality of work, and that whenever mistakes occurred, he corrected them free of charge and without complaint.

Hester discussed Dominguez's status with Sarah Morgan, the Operational Manager at the Orlando office. According to Morgan, Hester asked her to tell Dominguez that he was too old to be working and that he should retire. Morgan refused to do so based on her belief that such action was "discrimination" and was "against the law." Nevertheless, Hester fired Dominguez.

One or two weeks after Dominguez was fired, Hester and Morgan received a phone call from the Company's in-house counsel, Tom Harvey. Harvey called to investigate whether Dominguez might have legal recourse against the Company because of his termination. During the course of the conversation, Morgan repeated to Harvey the substance of her prior conversation with Hester. Harvey told them he agreed with Morgan's assessment that firing Dominguez because of his age would be illegal discrimination.

After his termination, Dominguez attempted to find other tailoring work. However, the Company was the only employer in the area looking for a tailor. For about a month, Dominguez worked busing tables in a small cafeteria owned by his sister, but he found that work to be unsatisfactory. Unable to find anything in the tailoring field or other suitable work, Dominguez retired and began receiving Social Security retirement benefits. Dominguez

continues to perform out of his home as much tailoring work as he can get, but it generates only a small income which is not enough to affect his Social Security benefits.

After exhausting his administrative remedies, Dominguez filed an ADEA claim against the Company. After a trial, the case was submitted to a jury which rendered a verdict in favor of Dominguez and awarded him back pay in the amount of $65,000.00. Because the jury found that the Company's action was a wilful violation of the ADEA, the court awarded Dominguez liquidated damages in the same amount. Finding that reinstatement was not a realistic alternative for Dominguez, the court instead awarded him $11,900.00 of "front pay." Including prejudgment interest, Dominguez's total award was $151,264.00, plus costs. The district court rejected the Company's request that it reduce the award by the amount of Social Security benefits Dominguez had received following his termination.

After the verdict, the Company renewed its motion for a judgment as a matter of law and, alternatively, for a new trial. The district court denied those motions, and this appeal ensued.

## II. DISCUSSION

We review a motion for judgment as a matter of law de novo. Daniel v. City of Tampa, 38 F.3d 546, 549 (11th Cir. 1994), cert. denied, ___ U.S. ___, 115 S. Ct. 2557 (1995). We review for abuse of discretion a district court's ruling on a motion for a new trial. F.D.I.C. v. Stahl, 89 F.3d 1510, 1514 (11th Cir. 1996).

The Company appeals the judgment of the district court on a number of grounds, including the district court's actions: (1)

4

admitting, over the Company's assertion of attorney-client privilege, testimony concerning the conversation between Harvey, Hester, and Morgan; (2) awarding liquidated damages; (3) awarding front pay instead of reinstatement; (4) failing to reduce Dominguez's award because of his failure to mitigate damages; and (5) considering a late-filed motion for attorneys' fees and costs. As for the admission of the conversation between Harvey, Hester, and Morgan, any error was harmless. Most of that testimony was either cumulative of other evidence proving essentially undisputed facts, or it had to do with indisputable propositions of law. The little of the conversation that was not of that nature actually favored the Company. None of the Company's other issues that we have listed above merit any further discussion.

The Company does raise one additional issue that deserves some discussion. The Company contends that the district court erred in failing to deduct from Dominguez's award the amount of Social Security benefits he has received since his termination. The district court held that Social Security benefits should not be subtracted from an ADEA award. That holding presents us with an issue of first impression which we review de novo, as we do with all questions of law. Jackson v. Chater, 99 F.3d 1086, 1092 (11th Cir. 1996).

In Brown v. A.J. Gerrard Manufacturing Co., 715 F.2d 1549, 1550 (11th Cir. 1983) (en banc), we held that unemployment compensation benefits should not be deducted from Title VII back pay awards. Given the analogous nature and purpose of Title VII

5

and the ADEA, our holding in <u>Brown</u> applies to ADEA cases as well as Title VII cases.  See <u>McKennon v. Nashville Banner Pub. Co.</u>, ___ U.S. ___, 115 S. Ct. 879, 884 (1995)("ADEA and Title VII share common substantive features and also a common purpose:  'the elimination of discrimination in the workplace.'");  <u>McKelvy v. Metal Container Corp.</u>, 674 F. Supp. 827, 831 (M.D. Fla. 1987) (declining to deduct unemployment compensation benefits from a back pay award in an ADEA case in view of our rationale in <u>Brown</u>).  Because there are no significant, relevant differences between Social Security benefits and unemployment benefits insofar as back pay awards are concerned, <u>see Maxfield v. Sinclair Int'l</u>, 766 F.2d 788, 795 (3d Cir. 1985), <u>cert. denied</u>, 474 U.S. 1057, 106 S. Ct. 796 (1985), we extend our <u>Brown</u> decision and hold that Social Security benefits are not to be deducted from ADEA awards.[1]

We are aware that several other circuits appear to have left to the discretion of the district courts whether to deduct Social Security benefits from back pay awards in ADEA cases.  See <u>Guthrie v. J.C. Penney Co., Inc.</u>, 803 F.2d 202, 209 (5th Cir. 1986) ("[T]he trial court did not abuse its discretion for refusing to deduct social security"); <u>EEOC v. Wyoming Retirement Sys.</u>, 771 F.2d 1425, 1432 (10th Cir. 1986) ("We cannot say that the trial court abused his discretion in deducting Social Security payments from the back

---

[1]We do not foreclose the possibility that receipt of Social Security benefits may be evidence that a plaintiff failed to use his best efforts to mitigate damages.  <u>Maxfield</u>, 766 F.2d at 793. However, in this case, the evidence supports a finding that Dominguez made every reasonable effort to find suitable employment after he was wrongfully terminated by the Company.

pay awards in this case."). However, we agree with the position of the Third Circuit in Maxfield, and "reject[] the argument that the decision whether to offset should be left to the discretion of the district court, favoring instead to fashion uniform rules to further statutory objectives." Id. at 793-95 (citations and internal quotations omitted).

In order to further the statutory objectives of the ADEA and to avoid a disparity of results, we decline to leave to the discretion of the district courts the decision whether to deduct Social Security from back pay awards in ADEA cases. As we explained in Brown, "A consistent approach to this legal question seems preferable to a virtually unreviewable discretion which may produce arbitrary and inconsistent results." Brown, 715 F.2d at 1551. Consequently, the district court was correct when it concluded that Social Security benefits should not be deducted from Dominguez's damage award. It would have been incorrect to rule otherwise.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.[2]

---

[2]We GRANT Dominguez's motion for attorney's fees as to entitlement and REMAND to the district court for a determination as to the appropriate amount.