663 So.2d 379 (1995)
Aaron TAYLOR, Jr., Plaintiff-Appellant,
v.
OAKBOURNE COUNTRY CLUB and Michael Byrne, Defendants-Appellees.
No. 95-388.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1995.
*380 Akilah Mawusi Ali, for Aaron Taylor Jr.
Ian A. MacDonald, for Oakbourne Country Club, et al.
*381 Before SAUNDERS, SULLIVAN and KNIGHT[*], JJ.
SULLIVAN, Judge.
This is an age discrimination case. Plaintiff, Aaron Taylor, Jr., appeals from a summary judgment rendered in favor of defendants, Oakbourne Country Club and its general manager, Michael Byrne. The trial court granted summary judgment dismissing Taylor's suit on the basis that he failed to establish a prima facie case of age discrimination under the Louisiana Age Discrimination in Employment Act (ADEA), La.R.S. 23:971 et seq. Plaintiff contends that, under the circumstances, summary judgment was improper. For the following reasons, we reverse and remand the case to the trial court.

PROCEDURAL BACKGROUND
Taylor originally pursued this cause of action as a pendent state law claim in a federal district court action in which he sought damages arising from allegedly unlawful race and age discrimination in employment. His claims were brought under the following statutes: 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, La.R.S. 23:971 et seq. and La.R.S. 23:1006 et seq. According to Taylor's petition, his claims under 42 U.S.C. §§ 1982, 1983, 1985, 1986 and La.R.S. 23:1006 et seq. were dismissed by the federal district court pursuant to defendants' motion on June 25, 1992. Thereafter, defendants filed a motion for summary judgment in federal court seeking dismissal of Taylor's 42 U.S.C. § 1981 claim; the federal district court rendered summary judgment in favor of defendants on May 3, 1993. By amended judgment dated May 5, 1993, the federal district court ordered Taylor to file his remaining state law claim in state district court within thirty (30) days.
Taylor then filed the present age discrimination action in state court. After the parties exchanged interrogatories and the answers thereto, defendants filed the present motion for summary judgment on August 2, 1994.

FACTS
The following dissertation of facts is derived from the allegations of Taylor's petition, his answers to defendants' interrogatories, the portions of his deposition pertinent to this age discrimination claim, defendants' answer to the petition, and defendants' answers to Taylor's interrogatories. Taylor's deposition was taken on June 23, 1992 during the pendency of Taylor's federal court action.
Taylor began working for Oakbourne in 1958 as a full time bartender. After tending bar for seven (7) or eight (8) years, he was promoted to the position of captain of the wait staff. Four (4) or five (5) years later, he was promoted once again to maitre d'. He held this position for six (6) or seven (7) years until he was promoted to assistant manager of Oakbourne. He served in this position for approximately fourteen (14) years.
As assistant manager, Taylor's duties included the managing of banquets and receptions, employee supervision and hiring and firing. He was also responsible for supervision of the locker room area. However, he stated in his deposition that this task was handled primarily by the head locker room attendant. Taylor was subordinate to and answered to the Oakbourne general manager who had authority over the entire country club.
In October 1990, Oakbourne's general manager, Bob Boyd, resigned. The country club replaced Boyd with defendant Byrne on January 8, 1991. In the interim period, Taylor assumed some of the general manager's duties in addition to his assistant manager duties.
The parties presented differing accounts of the nature of and grounds for Taylor's separation from employment with Oakbourne. The circumstances surrounding the departure are also disputed.

Taylor's Version
Taylor alleged that, at some time during February 1991, approximately six (6) weeks *382 after Byrne took over as general manager, Byrne called him into his office and informed him that he made "a lot of money." Taylor stated that Byrne told him that he would either be demoted or terminated from his employment. At the time, Taylor was earning $39,000.00 per year. Additionally, Oakbourne contributed $2,000.00 per year to his Individual Retirement Account (IRA). Taylor claimed to have left this meeting without commenting or asking Byrne for reasons for his demotion or dismissal.
Approximately one week later, Byrne called Taylor into his office again and offered him the job of running the bar and grill at a salary of $700.00 every two weeks. He was not told why he was being demoted. In response, Taylor informed Byrne that he was incapable of performing the job offered because of medical problems involving poor circulation in his legs. He asserted that the chronic circulation problem was caused by his long work hours at Oakbourne over the thirty-three (33) years of his employment.
Taylor decided against accepting the bartender position, but he requested that the Oakbourne board of directors delay its action until he reached the age for which he qualified for social security early retirement. In response, Byrne informed Taylor that the Oakbourne board of directors was working on a retirement or severance plan for him. Taylor then changed his offer and asked Byrne for a severance package of one year's salary and for Oakbourne's IRA contributions to continue until he reached age 62.
According to Taylor, the board of directors rejected his severance proposal. Instead, he was given three (3) months severance pay on February 20, 1991. This was his last day of work.
On the date of cessation of his employment with Oakbourne, Taylor was 55 years old. He alleged that Oakbourne hired Kim Tyler, age 35, to replace him.
Taylor filed answers to defendants' interrogatories on September 17, 1993. In his responses, Taylor asserted that three personsformer Oakbourne general manager Bob Boyd, Lillie Clark, and W.O. Toce were aware of Oakbourne's alleged acts of discrimination against him. He also stated that, in bringing this action, he sought back pay and benefits retroactive to February 20, 1991. He declined to produce documentary evidence of the alleged discrimination because he "has not had an adequate opportunity to conduct his discovery which would include certain documents in the possession of the defendant." He requested his right to reserve his response to this request for production.

Defendants' Version
In their answer, Oakbourne and Byrne generally denied the allegations of Taylor's petition. Defendants specifically denied that Taylor was terminated from his employment or that he was discriminated against on any unlawful basis. An "Employee Separation Notice," which was signed by Byrne on February 20, 1991, is included in the record. It indicates that Taylor voluntarily left his employment with Oakbourne.
Defendants filed this motion for summary judgment on the basis that, accepting Taylor's testimony as true, a rational trier of fact would not find in his favor. Taylor opposed the motion for summary judgment and filed a memorandum to that effect on October 24, 1994. Defendants' memorandum in support of summary judgment was filed four (4) days later.
From defendants' memorandum in support of summary judgment, which is not considered to be a pleading or other documentary evidence capable of supporting summary judgment, it is clear that their motion is based on the assertion that, accepting Taylor's deposition testimony as true, he is unable to establish a prima facie case of age discrimination. Therein, defendants assert that Taylor requested early retirement and then voluntarily resigned due to medical reasons associated with his legs. Also, they contend that, after he resigned, his assistant manager position was eliminated and his former duties were spread amongst several remaining employees.
Defendants, in memorandum, also contend that at the time of Taylor's resignation, Oakbourne was experiencing financial difficulties caused by a large decrease in membership. To reduce the impact of the lost *383 membership revenue, Oakbourne enacted several "belt tightening" measures, including the discontinuance of employee health insurance.
In support of their motion for summary judgment, defendants filed as exhibits Taylor's petition, the entire Taylor deposition and excerpts therefrom, defendants' answers to Taylor's interrogatories, and Taylor's answers to defendants' interrogatories. In defendants' answers to Taylor's interrogatories, they represent that, in order to terminate or demote a department head, the general manager must recommend such action to the personnel committee. The committee then either recommends approval or rejection of the move to the board of directors, which makes a final determination. According to the defendants, the general manager needs board approval before terminating or demoting a department head.
Also in response to interrogatories, defendants challenge Taylor's version of the circumstances surrounding his departure. They assert that, on January 17, 1991, Byrne discussed Taylor's work performance deficiencies with him. Taylor was told to improve or face reassignment or release from employment. On January 18, 1991, Taylor asked Byrne to let him know when he should resign. The next day, according to defendants, Taylor told Byrne of his leg problems and of his desire for one year's salary as severance pay. On January 22, 1991, Byrne presented Taylor's resignation to the personnel committee, which approved it with a three (3) month's pay severance package. The next day, Byrne asked Taylor to stay until February 19, 1991. On January 31, 1991, Byrne offered Taylor the head bartender position. Taylor accepted, but, the next day, he declined and advised Byrne of his resignation effective February 19, 1991. On that date, the board of directors was advised of Taylor's resignation and it approved of the personnel committee's severance pay proposal.
The trial court conducted a hearing on the motion for summary judgment on October 31, 1994. The trial court took the matter under advisement and on November 10, 1994, rendered reasons for judgment granting defendants' motion. The trial judge reasoned that plaintiff failed "to produce any evidence to substantiate that he was involuntarily terminated or that he was replaced by a person outside the protected age group." This failure to establish two (2) of the four (4) elements of prima facie age discrimination case warranted summary judgment.
As to the involuntary termination issue, the court concluded that Byrne himself had no authority without board approval to terminate or demote Taylor. The plaintiff's failure to present any evidence that the board considered or authorized his demotion or termination was considered fatal to his claim.
On the replacement issue, the trial court stated that Taylor's allegation that he was replaced by a 35 year old person was "misplaced." The trial judge explained that the assistant manager position "was eliminated due to corporate downsizing" and the duties thereof were transferred to other department heads. He also determined that the alleged replacement, Kim Tyler, was hired as a bar manager.
The trial judge signed a judgment dismissing Taylor's suit on November 22, 1994. From this judgment, Taylor appeals.

LAW
The Louisiana ADEA provides the basis of Taylor's suit in La.R.S. 23:972(A)(1), which provides:
A. It is unlawful for an employer to:
(1) Fail or refuse to hire, or to discharge, any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age.
The Louisiana ADEA is modeled after and identical to the Federal ADEA, which is codified at 29 U.S.C. §§ 621-634.

Burden of Proof on the Merits
Because there exists little Louisiana case law interpreting the provisions of Louisiana ADEA, it is permissible to look to the case law interpreting the Federal Act for guidance. Lege v. N.F. McCall Crews, Inc., 625 So.2d 185 (La.App. 3 Cir.), writ denied, *384 627 So.2d 638 (La.1993). In that case, this court looked to federal jurisprudence to determine that the plaintiff in an ADEA suit must first prove a prima facie case. The plaintiff must show that:
(1) he was in the protected age group between the ages of forty and seventy,
(2) his employment with the defendant was involuntarily terminated,
(3) he was qualified to perform the job that he was employed to perform, and
(4) he was replaced by a person outside the protected age group comprising individuals between the ages of forty and seventy.
Id. at 187, citing Belanger v. Keydril Co., 596 F.Supp. 823 (E.D.La.1984). Unlike the present case, however, Lege involved an appeal from a full trial on the merits after a jury verdict in favor of the employer.
The four (4) pronged burden of prima facie production emanates from the case of McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This initial prima facie stage is but one of three steps in the evidentiary process designed to "progressively ... sharpen the inquiry into the elusive factual question of intentional discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981). If the plaintiff-employee succeeds in presenting a prima facie case, a rebuttable presumption of intentional discrimination is established. To do so, he "need only make a very minimal showing ... that he was in the protected class, that he was qualified for the job in question, and that employees outside the protected class were more favorably treated." Thornbrough v. Columbus and Greenville Railroad Company, 760 F.2d 633, 639 (5th Cir.1985).
Once the employee establishes a prima facie case, the burden of production shifts to the employer to "rebut the presumption of intentional discrimination ... [by] articulat[ing] some legitimate nondiscriminatory reason" why the plaintiff was rejected or someone else was preferred; otherwise, the factfinder is required to find for the plaintiff." Id.
If the employer successfully rebuts the presumption of intentional discrimination, the burden of production "shifts back to the plaintiff, albeit at `a new level of specificity,' to prove that the reasons articulated by the employer are not true reasons but only pretexts." Id., quoting United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714-15, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983).

Summary Judgment
In both Federal and Louisiana law, summary judgment is reviewed de novo by applying the same standard as the trial court to determine if summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, 93-2512 (La. 7/5/94); 639 So.2d 730. The standard, as provided in La.Code Civ.P. art. 966(B), is as follows:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
See also Fed.R.Civ.P. 56(c).
In Smith, 93-2512 at pp. 26-30, 639 So.2d at 750-52, the Supreme Court of Louisiana comprehensively reviewed the jurisprudential rules applicable to summary judgments. We quote from the portion of the Smith analysis which is specifically germane to this case:
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of actions under the applicable theory of recovery. Penalber v. Blount, 550 So.2d 577, 583 (La.1989). "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." South Louisiana Bank v. Williams, 591 So.2d 375, 377 (La.App. 3d Cir.1991), writs denied, 596 So.2d 211 (La. 1992). Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of *385 a trial on the merits. Sassone v. Elder, 626 So.2d 345, 352 (La.1993); Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152, 1153-54 (La.1983) (collecting cases); McCoy v. Physicians & Surgeons Hospital, Inc., 452 So.2d 308, 310 (La.App. 2d Cir.), writ denied, 457 So.2d 1194 (La.1984) (noting that "[s]ummary judgment may not be used as a substitute for trial").

* * * * * *
Procedurally, the court's first task on a motion for summary judgment is determining whether the moving party's supporting documentspleadings, depositions, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. LSA-C.C.P. Art. 966(B); Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). "To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact." Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152, 1154 (La.1983). In making this determination, the mover's supporting documents must be closely scrutinized and the non-mover's indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). Since the moving party bears the burden of proving the lack of a material issue of fact, inferences to be drawn from the underlying facts before the court must be viewed in light most favorable to the non-moving party. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991); Vermilion, 397 So.2d at 493; Pace, 484 So.2d at 773.
If the court determines that the moving party has met this onerous burden, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Sanders, supra. LSA-C.C.P. Art. 967 outlines the non-moving party's burden of production as follows:
When a motion for summary judgment is made and supported ... an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
Smith, 93-2512 at pp. 28-29, 639 So.2d at 751-752.
The Thornbrough case discussed above is dispositive of the issue presented for our resolution. It is also factually and procedurally similar to the present case. In Thornbrough, the plaintiff, age 56, alleged he was discharged by his employer because of his age. Because of chronic financial losses, the employer embarked on a plan to cut these losses through a reduction in its work force. Thornbrough's position was eliminated after his discharge and its duties were divided among three (3) younger remaining employees, at least one of whom was outside the protected age class. As in the present case, the district court in Thornbrough granted the employer's motion for summary judgment on the ADEA claim on the ground that Thornbrough failed to establish a prima facie case.
The United States Fifth Circuit Court of Appeals reversed the summary judgment because, on review, it found that Thornbrough raised a genuine issue of material fact. In so doing, the court relied on the principle that summary judgment is generally "an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent ... determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder." Thornbrough, 760 F.2d at 640-641. The court also reasoned as follows:
Although the district court speaks of Thornbrough not having met his "burden" of "presenting" a prima facie case, we assume that the district court meant that Thornbrough did not raise a genuine issue of material fact as to the existence of a prima facie case. To make out a prima facie case, the plaintiff must prove the necessary elements "by a preponderance *386 of the evidence." Burdine, 450 U.S. at 253, 101 S.Ct. at 1094. Even if the plaintiff has not succeeded in meeting this burden of proof, if he has raised a genuine issue of material fact, he should survive summary judgment. Fed.R.Civ.P. 56(c); accord Locke v. Commercial Union Ins., 676 F.2d 205, 208 (6th Cir.1982) (Jones, J., dissenting) ("It is th[e] existence of a genuine issue of material fact, not the existence or nonexistence of a prima facie case, which makes the instant grant of summary judgment improper.").
* * * * * *
[T]here is no inherent relationship between the failure to establish a prima facie case and summary judgment. The failure to establish a prima facie case means merely that the plaintiff has failed to establish facts sufficient to create a legally mandatory, rebuttable presumption. It means that the factfinder is not required to find in the plaintiff's favor; it does not mean that the factfinder is not permitted to find in the plaintiff's favor. A fact may be material for purposes of defeating a motion for summary judgment and yet fail to create a rebuttable presumption.
Id. at 641 n. 8, 9. See also Lindsey v. Prive Corporation, 987 F.2d 324 (5th Cir.1993) and Amburgey v. Corhart Refractories Corporation, Inc., 936 F.2d 805 (5th Cir.1991).
The situation presented in the case sub judice is strikingly similar to the Thornbrough case. Taylor claims he was involuntarily terminated when he was given a choice of demotion to bartender (which he contends he was physically incapable of performing) or dismissal. Oakbourne and Byrne dispute Taylor's version of events and claim he voluntarily resigned due to health reasons. Additionally, Taylor argues that he was replaced by the 35 year old Kim Tyler. Oakbourne and Byrne counter that Taylor's position was eliminated and Tyler was hired as head bartender.
The above noted disputed facts are material in nature since the resolution thereof will determine whether Taylor establishes a prima facie case. Their existence or nonexistence are essential to Taylor's cause of action under the ADEA. The trial court erred in making the factual determinations that Taylor voluntarily resigned and was not replaced by someone outside the protected age class. By concluding that Taylor was not involuntarily terminated and that he was not replaced by Tyler, the trial court erred in deciding the merits of genuine material factual issues. Such determinations are the province of the factfinder in a trial on the merits.

DECREE
For the foregoing reasons, the summary judgment rendered in favor of defendants, Oakbourne Country Club and Michael Byrne, and against plaintiff, Aaron Taylor, is reversed. This case is remanded to the trial court for further proceedings in accordance with this opinion.
Costs of this appeal are assessed to defendants, Oakbourne Country Club and Michael Byrne.
REVERSED AND REMANDED.
NOTES
[*] Judge William N. Knight of the Thirty-first Judicial District participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.