JjDECUIR, Judge.
Plaintiff, Aaron Taylor, Jr., appeals the May 21, 2002 judgment of the district court, dismissing with prejudice his claim of unlawful age discrimination. For the following reasons, we affirm.
FACTS
Taylor was hired by defendant, Oakb-ourne Country Club, in 1958, at the age of 22. Taylor was initially hired as a bartender, but gradually was promoted to the position of captain of the wait staff, then to maitre d’, and finally to the position of assistant general manager, which he held for approximately fourteen years. As assistant general manager, Taylor was responsible for the food and beverage service, which included hiring and firing employees and booking parties and other functions. He also supervised the locker room and, to some extent, the kitchen. Taylor resigned from his position at Oakbourne in February of 1991. At the time he left Oakbourne, Taylor was earning approximately $39,000.00 a year.
During the late 1980s, Oakbourne began experiencing financial difficulties, largely due to a decrease in membership. As the assistant general manager, Taylor answered to the Oakbourne general manager. Robert Owen Boyd served as general manager from 1985 until his resignation in September of 1990. Boyd was replaced by Michael Byrne who began working as Oakbourne’s general manager on January 8, 1991. During the interim period, before Byrne was hired, Taylor assumed some of the general manager job duties in addition to his assistant manager duties at the club. Byrne testified that when he was interviewed for the position of general manager, he was advised that Oakbourne was having financial difficulties, and that the loss of revenues from the food and beverage service was a major area of concern. Byrne also said he was told that Taylor was very highly paid for his contribution to Oakbourne and, if hired, Byrne would have to deal with that issue.
I p.The specific facts surrounding Taylor’s resignation are disputed. In the defendants’ version of the events preceding Taylor’s resignation, on or about January 17, 1991, Byrne summoned Taylor to his office for a meeting. Byrne testified he told Taylor that if his job performance did not improve he would be laid off or demoted. Taylor told him that circulatory problems in his legs made it too painful to work, and he would have to resign anyway. Taylor then proposed a severance package of one year’s salary and continuing IRA contributions. Byrne later offered Taylor the position of head bartender and Taylor initially agreed to accept that position. However, he ultimately decided to decline the offer and resign. The board of directors approved a severance package of three months’ salary.
Taylor’s version of these events is somewhat different from Byrne’s testimony. Taylor testified that at the January 17, 1991 meeting, Byrne told him, “You know you make a lot of money. I’m going to have to fire you or demote you.” Taylor further alleged that he was never informed of any deficiencies in his work performance. Taylor’s understanding of the bar-tending position was that his salary would be reduced to $16,800.00 a year, while Byrne asserted that the total compensation as head bartender would have been $22,000.00 a year.
*962 On the issue of his circulatory problems, Taylor testified that he never told Byrne that he could no longer work as assistant manager because of his leg problems. Rather, he contends he merely brought up the issue of Oakbourne’s responsibility for what he considered to be a work-related medical condition. According to Taylor, after Byrne mentioned that the board was considering a severance package for him, he told Byrne if the board would give him one year’s salary and contributions to his IRA until he reached age sixty-two, he would not seek redress for his leg problems.
| .¿PROCEDURAL HISTORY
Taylor originally asserted this cause of action as a pendant state law claim in a federal suit alleging unlawful age and race discrimination. The federal claims were ultimately dismissed, but the state law claims remained viable. Taylor then filed suit against Oakbourne and Byrne in state court on June 9, 1993, alleging unlawful age discrimination. On November 22, 1994, the trial court granted summary judgment and dismissed Taylor’s claim for failure to establish a prima facie case. The ruling of the trial court was reversed and remanded by this court in Taylor v. Oakbourne Country Club, 95-388 (La.App. 3 Cir. 10/04/95), 663 So.2d 379.
A two day bench trial on this matter commenced on February 13, 2002. The trial court granted defendant Byrne’s motion for involuntary dismissal because he was not Taylor’s employer and, therefore, not liable under La.R.S. 23:972. The trial court entered judgment for Oakbourne on May 1, 2002. Taylor now appeals the trial court’s ruling in favor of Oakbourne. The dismissal of Byrne is final.
The trial judge provided exteñsive written reasons for his judgment. He concluded that Taylor successfully established a prima facie case of discrimination under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). He found that the defendants’ claim that Taylor was fired for poor job performance was not proven and discussed the evidence offered in support of Oakbourne’s contention that it was trying to cut costs. The court concluded that Oakbourne successfully countered the presumption of discrimination created by Taylor’s establishment of a prima facie case. The court based this conclusion on its interpretation of Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), and held that the mere correlation between Taylor’s age and his salary was insufficient to prove illegal age discrimination.
^ANALYSIS
We are called upon in this appeal to determine the simple question of whether Oakbourne’s discharge of Taylor was improperly motivated by Taylor’s age. We are guided in this query by reference to both federal and state jurisprudence. The pertinent statutory law is Louisiana’s Age Discrimination in Employment Act (LA-DEA), which was contained in La.R.S. 23:971 et seq.[1], and its prohibition against age ■ discrimination is virtually identical to that under federal law. Therefore, federal jurisprudence has routinely been used to guide our state courts in the proper interpretation of the LADEA.
This court articulated the prima facie case requirements a plaintiff must establish in an LADEA suit in Taylor, 663 So.2d at 383-84. There we stated:
*963 Because there exists little Louisiana case law interpreting the provisions of Louisiana ADEA, it is permissible to look to the case law interpreting the Federal Act for guidance. Lege v. N.F. McCall Crews, Inc., 625 So.2d 185 (La.App. 8 Cir.), writ denied, 627 So.2d 638 (La.1993). In that case, this court looked to federal jurisprudence to determine that the plaintiff in an ADEA suit must first prove a prima facie case. The plaintiff must show that:
(1) he was in the protected age group between the ages of forty and seventy,
(2) his employment with the defendant was involuntarily terminated,
(3) he was qualified to perform the job that he was employed to perform, and
(4) he was replaced by a person outside the protected age group comprising individuals between the ages of forty and seventy.
Since Taylor was decided, however, this court has recognized a change in the elements required for establishing the plaintiffs prima facie case in McCain v. City of Lafayette, 98-1902, (La.App. 3 Cir. 5/5/99), 741 So.2d 720, writ denied, 99-1578 (La.9/17/99), 747 So.2d 563, cert. denied, 528 U.S. 1118, 120 S.Ct. 939, 145 L.Ed.2d 817 (2000). “Reference to recent federal jurisprudence indicates that the final element listed above has changed since Taylor was rendered. In O’Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), the United States Supreme Court found the plaintiff in an age discrimination case no longer has to establish that he was replaced by a person outside the protected class.” Id. at p. 16, 741 So.2d at 729.

A. Burden of Proof

In Taylor, p. 8, 663 So.2d at 384, we explained the burden shifting that exists in ADEA claims:
The four (4) pronged burden of prima facie production emanates from the case of McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This initial prima facie stage is but one of three steps in the evidentiary process designed to “progressively ... sharpen the inquiry into the elusive factual question of intentional discrimination.” Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981). If the plaintiff-employee succeeds in presenting a prima facie case, a rebuttable presumption of intentional discrimination is established. To do so, he “need only make a very minimal showing ... that he was in the protected class, that he was qualified for the job in question, and that employees outside the protected class were more favorably treated.” Thornbrough v. Columbus and Greenville Railroad Company, 760 F.2d 633, 639 (5th Cir.1985).
Once the employee establishes a pri-ma facie case, the burden of production shifts to the employer to “rebut the presumption of intentional discrimination ... [by] articulat[ing] some legitimate nondiscriminatory reason” why the plaintiff was rejected or someone else was preferred; otherwise, the factfinder is required to find for the plaintiff.” Id.
If the employer successfully rebuts the presumption of intentional discrimination, the burden of production “shifts back to the plaintiff, albeit at ‘a new level of specificity,’ to prove that the reasons articulated by the employer are not true reaspns but only pretexts.” Id., quoting United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714-15, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983).
*964 IfrB. Standard of Review
Taylor asserts that the trial judge was legally incorrect in his application of La.R.S. 23:971 et seq., and interpreting jurisprudence and that this case, therefore, is subject to de novo review. The standard of review for appellate courts in reviewing a question of law is simply whether the court’s interpretative decision is legally correct. Phoenix Assur. Co. v. Shell Oil Co., 611 So.2d 709 (La.App. 4 Cir.1992). The trial court’s factual findings are subject to the manifest error or clearly wrong standard of review. LaBove v. Raftery, 00-1394, 00-1423 (La.11/28/01), 802 So.2d 566, citing Stobart v. State of Louisiana, through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993).
The Supreme Court, in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000), quoting St. Mary’s Honor Center v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993), stated:
[W]e reason[ ] that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer’s explanation. Specifically, we stated:
“The factfinder’s disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the pri-ma facie case, suffice to show intentional discrimination. Thus, rejection of the defendant’s proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.”
In this age discrimination case, this court is compelled to review the defendant’s proffered reasons for the plaintiffs discharge and the factual determination of whether those reasons are “unworthy of credence,” as described in Hazen Paper. If the proffered reasons are not, in fact, believable, we must then determine if the plaintiffs age actually played a role in the adverse employment |7decision and “had a determinative influence on the outcome.” Hazen Paper, 507 U.S. 604, at 610, 113 S.Ct. 1701; LaBove, 802 So.2d 566 at 574.
In Hazen Paper, the United States Supreme Court granted writs to address the specific question of whether an employer’s interference with the vesting of pension benefits violates the federal ADEA. The appellate court in that case had affirmed a judgment of liability and relied heavily on evidence that the employer had fired the employee in order to prevent his pension benefits from vesting. The Supreme Court held there is no disparate treatment under the ADEA when the factor motivating the employer is some factor other than the employee’s age. The Court noted that, under the ADEA, employers cannot rely on age as a proxy for an employee’s other characteristics, such as productivity; they must focus on those factors directly. The Court further noted that:
When the employer’s decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is. Pension plans typically provide that an employee’s accrued benefits will become nonforfeitable, or “vested,” once the employee completes a certain number of years of service with the employer. See 1 J. Mamorsky, Employee Benefits Law § 5.03 (1992). On average, an older employee has had more years in the work force than a younger employee, and thus may well have accumulated more years of service with a particular employer. Yet an employee’s age is analytically distinct from his years of service. An employee who is younger than *965 40, and therefore outside the class of older workers as defined by the ADEA, see 29 U.S.C. § 631(a), may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily “age based.”
Hazen Paper, 507 U.S. at 611, 113 S.Ct. at 1706-07.
| si. Taylor’s Prima Facie Case
After reviewing the specific facts of this case, we agree with the trial court’s determination that Taylor successfully established the necessary elements of a prima facie case of age discrimination. Taylor clearly falls within the protected age group, as he was fifty-four years of age at the time of his resignation from Oakbourne.
Taylor also showed that his employment with Oakbourne was involuntarily terminated. Oakbourne contends that Taylor was not involuntarily terminated, that he resigned his position voluntarily. While it is true that Taylor did resign, the trial court found that Taylor’s resignation was involuntary. In Stephens v. C.I.T. Group/Equipment Financing, Inc., 955 F.2d 1023 (5th Cir.1992), the Fifth Circuit held that an employee’s resignation does not necessarily defeat a prima facie case of age discrimination. “Even if the plaintiff resigned from the position, he can satisfy the discharge element of an age discrimination claim by proving that he was constructively discharged.” Id. at 1027. The court went further to state that factors such as demotion and the permanence of that demotion, reduction in salary, and reduction in responsibility should be considered in a constructive discharge analysis. Id. The supreme court recognized the burden of proof required for an employee to show constructive discharge in Bannister v. Dep’t of Streets, 95-0404 (La.1/16/96), 666 So.2d 641. “To support such a claim ... an employee must prove working conditions so difficult or unpleasant that a reasonable person placed in that position would have felt compelled to resign.” Id. at 648.
Taylor presented sufficient grounds for a finding of constructive discharge. The evidence presented at trial indicates that Taylor did not want to leave Oakbourne and that he was very upset after being made aware that he was going to be demoted or fired. He was told that he could return to the position of bartender, a job he had |9held thirty-three years before. As stated by the trial judge, “returning to the position of bartender would be demeaning and humiliating” for Taylor, and under these circumstances, any reasonable employee would have felt compelled to resign.
Finally, the trial court correctly determined that Taylor successfully established the third element of a prima facie case of age discrimination, that he was qualified to perform the job of assistant general manager, which he had held for fourteen years. During the trial, the defendants showed that Oakbourne had suffered a recent decrease in revenue in the food and beverage category and insinuated this was due to Taylor’s deficiencies in his job performance. We note, however, as did the trial judge, that this decrease in revenue corresponds to new policies instituted by the board of directors, changes in which Taylor apparently had no input. A heavy assessment was levied to members, designed specifically to reduce the membership of the club, in an effort to battle a problem of overcrowding on the golf course. As a result, approximately 160 *966 members did resign. The loss of membership necessarily resulted in a loss of revenue for food and beverage service.
To further counter the allegations that his job performance was substandard, Taylor presented glowing letters of reference from previous general managers and Oakbourne employees. He also presented letters from club members directed to the board and expressing their dissatisfaction with the treatment of Taylor’s situation and their ultimate displeasure at his leaving Oakbourne. Based on the evidence presented at trial, including these testimonials, the trial court found that Taylor was clearly qualified to perform the job for which he was hired and had successfully established the third element of his prima facie case.
|ing. Oakboume’s Rebuttal of the Presumption of Discrimination
Once the plaintiffs prima facie case is successfully established, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the employment action in question, which can overcome the presumption of impermissible discrimination. Thereafter, “when all of the evidence has been presented, the overall evidence ultimately must be sufficient for the jury to conclude that age discrimination was the true reason for the employment decision.” LaBove, 802 So.2d at 574.
Oakbourne offered two justifications for its actions concerning Taylor and his position at the club. First, Oakbourne claimed that Taylor’s work performance was poor. As shown in the discussion of Taylor’s prima facie case above, there is ample evidence of Taylor’s commendable job performance, general popularity, and the level of respect he received from club members and management alike. The trial court found the job performance problems cited by Byrne were either nonexistent or not the result of Taylor’s job performance. He specifically noted in his reasons for judgment that the decision to take action against Taylor was made prior to Byrne’s arrival and, therefore, insuffi-ciencies in job performance purportedly discovered by Byrne after his arrival “could not have been the motivation for firing Taylor, but were instead merely a pretext.” We find no error in the trial judge’s conclusions on this point.
Oakbourne’s second justification for the employment decision regarding Taylor was that his demotion was the result of a decision to flatten the management structure and save the club money, rather than an act of impermissible discrimination. Byrne testified that he was given the responsibility of restoring the club to financial stability; he determined that both Taylor’s position as assistant manager and his salary | nwere detrimental to the club’s profitability. Notably, Byrne testified that he had never had an assistant manager before at any other club, and he did not believe the position was necessary. He believed elimination of the position would result in a financial savings to the club and increase efficiency. While payroll costs did initially increase under Byrne’s management due to various changes he implemented, the evidence shows that ultimately the changes resulted in a return to profitability.
Taylor maintains that this proffered motivation is pretextual. He asserts that Byrne actually added a new management level and increased Oakbourne’s overall salary costs for management personnel by the end of 1991. However, the evidence shows that only the position of maintenance supervisor was added to the management staff in order that repairs could be done in-house, thereby saving the club money on outside contractors. Taylor also *967 alleges that he was directly replaced by Kim Tyler, a twenty-eight-year-old former associate of Byrne. Oakbourne acknowledges that Tyler was hired as director of food and beverage service at a salary of $24,000.00; however, Oakbourne insists that Tyler was not a manager and had fewer responsibilities than Taylor did as assistant manager, responsibilities that Byrne himself took over. Tyler was paid $15,000.00 less than Taylor had been paid.
Given this testimony, the trial court found that Oakbourne’s motivation for discharging Taylor was “a desire to improve the club’s profitability.” The court further explained, “Although there is a correlation between his salary and his age, this correlation is insufficient to prove illegal age discrimination under the Supreme Court decision in Hazen Paper. Having considered all the evidence and the inferences that can be drawn therefrom, the Court concludes that plaintiff has failed to prove that age was a determinative factor in his discharge.” We agree with this conclusion. We find Taylor was discharged primarily because of his high salary, not his age, and his salary |12was based only in part on his years of service with the club. His salary also reflected management responsibilities, which the new general manager assumed, and merit raises given for exemplary service, factors which have nothing to do with age.
Financial and business considerations are necessarily a part of personnel decisions and are not always improper. The trial court closely examined the decision-making process in Oakbourne’s action against Taylor and concluded that the profitability rationale offered by Oakb-ourne was not a pretext for improper age discrimination. The court also concluded that Taylor’s age was not a determining factor in his discharge. Our review reveals no error in these factual findings. Finally, we find no merit to Taylor’s argument that the trial court erred in failing to strike the testimony of Michael Byrne based on internal inconsistencies and implausibility.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Aaron Taylor, Jr.
AFFIRMED.
SAUNDERS, J., dissents and assigns written reasons.

. La.R.S. 23:971-975 have since been repealed and replaced with the Louisiana Employment Discrimination Law found in La. R.S. 23:301 et seq.