GUIDRY, J.
[ ^Defendant-appellant, the Board of Supervisors for the University of Louisiana System (Board of Supervisors), appeals the trial court’s judgment in favor of plaintiff-appellee, James Robinson, awarding damages in accordance with a jury’s verdict finding that the University of Louisiana at Lafayette Police Department (ULLPD) discriminated against Robinson *515 based on age. For the reasons that follow, we affirm the trial court’s judgment.
FACTS AND PROCEDURAL HISTORY
In 1971, Robinson was hired to work in security at the University of Louisiana at Lafayette (ULL).[1] Shortly after, the security department was transformed into the campus police department. In 1999, Police Chief Joey Sturm delegated the responsibility of the ULLPD evidence custodian to Robinson, whereupon Robinson had exclusive access to and responsibility for the contents of the evidence room. Robinson continued to work his way up the ranks and was promoted by Chief Sturm to ULLPD Captain, the second highest rank in the chain of command.
In 2002, Chief Sturm left ULLPD to work elsewhere. During that time, others served as Chief, including Robinson who held the position of Interim Chief of ULLPD on three separate occasions. Chief Sturm returned to ULLPD as chief of police in 2009. In October/November of 2010, under Chief Sturm’s leadership, ULLPD underwent an organizational and policing policy change. In conformity with the State’s Civil Service requirements, the former ULLPD offices were modified. Most employees received an increase in salary and increase in rank, including Robinson. Effective October 27, 2010, continuing as the second-in-command, Robinson, who was sixty-six years old, began service at ULLPD as a | ..¡Police Major A. Chief Sturm was forty-one years old when the reorganization took place. It is undisputed that concomitantly with the Civil Service reorganization, ULLPD went from a community-based policing operation to an intelligence-led policing operation.[2] None of the ULLPD employees, including Robinson, received additional training for implementation of the new policing policy or in effective means of communication, particularly computer use.
Additionally, as part of this organizational and policy change, Robinson was to transfer custodian duties of the evidence room to Officer Billy Abrams. In November 2010, the building that housed the ULLPD evidence room was scheduled for significant renovations and, therefore, all the evidence and property had to be moved from one facility to another. In December 2010, Robinson was directed by Chief Sturm to perform an evidence audit of the contents of the evidence room prior to the transfer of custodial duties to Officer Abrams and prior to the transfer of evidence to the new facility. Robinson admittedly did not know how to perform an evidence audit and selected Officer Daniel Mendoza to assist him with the transfer.
By early 2011, all of the evidence and other secured property were transferred to a new building. In March 2011, Robinson received his first ever unsatisfactory evaluation, and the evidence custodian duties for which he had been responsible since 1999 were ultimately turned over to Officer Abrams. On March 15, 2011, Chief Sturm recommended disciplinary action against the 39-year ULLPD Major for failing to follow direct orders related to the *516 evidence room audit and the transfer and transition of his responsibility as evidence custodian to Officer Abrams.
| thereafter, on May 9, 2011, Robinson executed a form certifying his intent to retire effective July 15, 2011. After Robinson indicated his intent to retire, the proposed disciplinary action was rescinded.
In the remaining months of his service, Robinson was subjected to an internal affairs investigation over alleged missing evidence that was subsequently located. He was also reassigned to patrol the New Iberia Research Center (NIRC), where the university houses primates. It is undisputed that this assignment was not in conformity with his job description as a Police Major A, although Robinson continued to collect the same salary. Robinson subsequently retired on July 15, 2011.
On August 20, 2012, Robinson filed a petition for damages, averring that the Board of Supervisors was responsible for age-based employment discrimination by ULLPD in violation of both federal and state law.[3] A three-day trial was held before a jury. The jury returned a verdict finding that the Board of Supervisors was liable for ULLPD’s age-based discrimination against Robinson and awarded Robinson substantial damages. The trial court signed a judgment in conformity with the jury’s verdict and also entered an award of attorney’s fees in favor of Robinson. This appeal followed.
DISCUSSION
. Both the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and Louisiana’s Age Discrimination Employment Act (LADEA), La. R.S. 23:311-314, make it unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to his compensation or his terms, conditions, or privileges of employment because of age. 29 U.S.C. § 623; La. R.S. 23:312(A)(1). Because Louisiana’s age ^discrimination statute is nearly identical to the' federal statute, Louisiana courts have traditionally used federal case law for guidance. LaBove v. Raftery, 00-1394, 00-1423, p. 9 (La. 11/28/01), 802 So.2d 566, 573.
Under both federal and state law, in the absence of direct proof of discrimination, the plaintiff in an age discrimination case must follow the three-step burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Wyvill v. United Companies Life Insurance Co., 212 F.3d 296, 301 (5th Cir. 2000). Under the McDonnell Douglas framework, the plaintiff claiming age discrimination must first establish a prima facie case of discrimination. To establish a prima facie case of age discrimination, the plaintiff must show that (1) he was disr charged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or Hi) otherwise discharged because of his age. Eastin v. Entergy Corp., 09-293, p. 34 (La. App. 5th Cir. 7/27/10), 42 So.3d 1163, 1185-86; Berquist v. Washington Mutual Bank, 500 F.3d 344, 349 (5th Cir. 2007); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 *517 (2000). Once established, the prima facie case raises an inference of unlawful discrimination. See Eastin, 09-293 at p. 34, 42 So.3d at 1186.
If the plaintiff establishes a prima facie case, the defendant must then articulate a legitimate, non-discriminatory reason for its action. The defendant’s burden, in rebutting a prima facie case, is one of production, not persuasion. Eastin, 09-293 at p. 34, 42 So.3d at 1186.
If the defendant articulates such a reason, then the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant’s reason is mere pretext for discrimination, Eastin, 09-293 at p. 32, 42 So.3d at 1185-86. This may be accomplished directly, by showing that a discriminatory reason more than likely motivated the employer, or indirectly, by showing that the asserted reason is unworthy of credence. Eastin, 09-293 at p. 35, 42 So.3d at 1186.
The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff, who must prove, by a preponderance of the evidence, that age was the “but-for” cause of the challenged adverse employment action. Eastin, 09-293 at p. 28 and 35, 42 So.3d at 1182 and 1186; see also Gross v. FBL Financial Services, Inc., 557 U.S. 167, 180, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009). And while a factfinder’s rejection of the employer’s legitimate, nondiscriminatory reason for its action may not compel judgment for the plaintiff, the factfinder’s disbelief of the reasons put forward by the defendant, together with the elements of-a prima facie case, may permit the trier of fact to infer the ultimate fact of intentional discrimination. See Reeves, 530 U.S. at 147-148, 120 S.Ct. at 2108-2109.
As depicted above, the determination of whether a plaintiff has established age-based discrimination is necessarily a fact-intensive inquiry. It is well-settled that a court of appeal may not set aside a jury’s finding of fact unless it is clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989); Stobart v. State, Department Of Transportation and Development, 617 So.2d 880, 882 (La. 1993). Where -there is conflict in the testimony,- reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell, 549 So.2d at 844. If the jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the frier of fact, it would have weighed; the evidence differently. Rosell, 549 So.2d at 844. Where there, are two Impermissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell, 549 So.2d at 844.
Further, when findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell, 549 So.2d at 844. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. *518 Rosell, 549 So.2d at 844-845. However, where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell, 549 So.2d at 845.
Prima Facie Case
After reviewing the record in the instant case, we find no error in the jury’s determination that Robinson established a pri-ma face case of age discrimination. It is undisputed that at the time of his retirement, Robinson was sixty-six years of age and therefore, within the protected class. See LaBove, 00-1394 at p. 9, 802 So.2d at 573.
Additionally, the record demonstrates that at the time of his retirement, Robinson had worked for ULLPD for forty-years. Dux-ing that time, he was promoted to Captain and to Major, where he served as second-in-command to the Chief. Robinson also served as the sole custodian in charge of the ULLPD evidence room for approximately eleven years. Robinson had consistently received outstanding job performance evaluations, and according to Lieutenant [sMichelIe Broussard, he was the “go to” person at ULLPD. With regard to the evidence room, Lieutenant Michael Louviere testified that Robinson had attended two certifying classes for evidence training, and that during his tenure as evidence custodian, ULLPD never had a problem producing evidence. Thus, given Robinson’s tenure, experience, and positive performance evaluations with ULLPD, the record supports that he was qualified for the position of Major.
Further, Robinson presented evidence demonstrating that he was constructively discharged from his position. In order to state a discrimination claim based on constructive discharge, the plaintiff must establish that the employer created working conditions so intolerable that a reasonable employee would feel compelled to resign. Taylor v. Oakbourne Country Club, 02-1177, p. 8 (La.App. 3 Cir. 5/14/03), 846 So.2d 959, 965, writ denied, 03-2025 (La. 11/7/03), 857 So.2d 494; see also Bannister v. Department of Streets, 95-0404, p. 11 (La. 1/16/96), 666 So.2d 641, 648. Whether an employee would feel forced to resign is case and fact specific; however, courts consider the following aggravating factors relevant: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not. Haley v. Alliance Compressor LLC, 391 F.3d 644, 649-650 (5th Cir. 2004).
As noted above, Chief Sturm initiated organizational changes at ULLPD in late 2010. As part of this reorganization, Robinson’s classification changed from Captain to Major. However, his rank as second-in-command remained unchanged. Robinson testified, and Chief Sturm acknowledged, that prior to the reorganization, Robinson had an unblemished work history. However, after the reorganization, Robinson received several verbal and written reprimands from Chief Sturm for | ¡failure to perform tasks that Robinson had admitted not knowing how to perform and for which, according to Robinson, he was denied assistance in completing. Rather than provide Robinson with assistance in completing an audit that had never been performed by anyone at ULLPD, Robinson and Officer Mendoza stated that Chief Sturm yelled at Robinson, told him he was incompetent, and called him names.
*519 According to Sergeant Tony Jonhson, although Robinson was second-in-command, Chief Sturm rarely interacted with Robinson. Sergeant Johnson and Lieutenant Broussard stated that Chief Sturm relied more on Captain Larry Zerangue, a lower ranking officer. Chief Sturm acknowledged that command staff participated in meetings regarding the reorganization and reallocation of ULLPD and its change in policies. However, Sergeant Johnson stated that Robinson, who was second-in-command and a part of Chief Sturm’s command staff, was excluded from command staff meetings. Additionally, Sergeant Johnson and Robinson stated that Robinson was not afforded the same privileges as other members of command staff, including use of a ULLPD credit card or issuance of an iPhone or iPad.
Sergeant Johnson also stated that beginning in January 2011, Chief Sturm started relieving Robinson of his duties. First, Robinson was relieved of his duty as patrol commander in January 2011, and Sergeant Johnson was told not to report anything to Robinson anymore. Then, as acknowledged by Chief Sturm, by the time the evidence room transfer was completed in March 2011, Robinson had been relieved of his duties as evidence custodian. Shortly thereafter, Robinson was relieved of his remaining duties. According to Robinson, he was forced to sign retirement papers on May 9, 2011, due the foregoing actions by Chief Sturm by not only eliminating his job responsibilities and his role in ULLPD but also in engaging in a pattern of harassment regarding the transfer of evidence.
ImFinally, Robinson produced evidence that he was replaced by someone younger. As noted above, Robinson was sixty-six years of age when he retired from ULLPD. Captain Zerangue, who was approximately forty years old at the time, assumed Robinson’s position as Major when Robinson retired. Additionally, Chief Sturm testified that other members of his command staff were in their early to mid-forties, with one employee, Lieutenant Lavergne in his late forties. Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth prong of an age discrimination prima facie case. Eastin, 09-293 at p. 34, 42 So.3d at 1186.
Defendant’s Proffered Legitimate, NonDiscriminatory Reason
At trial, the defendant asserted that 1) there was no adverse employment action, i.e. no constructive discharge, because Robinson voluntarily chose to retire and 2) even if there was an adverse employment action, it was not because of Robinson’s age but was because of his continued insubordination.
Charlene Hamilton, Human Resources Manager for ULL, stated that during a March 2011 meeting with Robinson regarding his proposed suspension, Robinson told her that he was going to retire effective July 15, 2011. According to Hamilton, it was based upon this assertion that the proposed disciplinary action was subsequently rescinded. Furthermore, Hamilton stated that Robinson had told her several times before the March 2011 meeting that he was contemplating retirement, because he was frustrated with some of his duties. Lieutenant Louviere also stated that Robinson had said for years that he was planning on retiring.
Chief Sturm also testified at trial, stating that he promoted Robinson twice, once in 2002 to Captain and once in 2010 to Major. According to Chief Sturm, while the promotion came about as a result of reorganization in ULLPD so as to be in line with state civil service requirements, he could have chosen anyone else for the position of Major, including advertising *520 outside of ULLPD. However, Chief | uSturm stated that he chose Robinson, because he had worked with him for years and felt that he deserved the position. Chief Sturm also stated that he put Robinson in charge of the evidence room in 1999-2000. Chief Sturm noted that Robinson’s promotion to Major also involved a change in job duties. Chief Sturm stated that when he talked to Robinson about the reorganization of ULLPD and/or the reallocation of job responsibilities, he told Robinson that his duties would change, i.e. he would no longer be handling tickets, he would no longer be picking up ticket books in Baton Rouge, and his evidence room duties would be transferred to a lower ranking officer. Accordingly, when the evidence room had to be moved to a new location in 2010, Chief Sturm decided at that time to also transition custody of the evidence room to Officer Abrams.
According to Chief Sturm, it was at this time that things began to change. Robinson had selected Officer Mendoza to assist him with the transfer of evidence to the new location. Chief Sturm stated that shortly thereafter, Officer Mendoza expressed concern to him that Robinson was going to throw away all of the evidence except for guns, drugs, and money. Based on this conversation with Officer Mendoza, Chief Sturm had a discussion with Robinson, wherein he discussed the procedure to be followed in transferring evidence to the new location. Chief Sturm followed up this discussion with an email dated December 14, 2010, detailing the procedure to be followed in conducting an audit of all of the evidence and in transferring the evidence to the new location. Particularly, Chief Sturm directed that Robinson perform the detailed audit as instructed prior to the transfer of any evidence to the new location, and that he acknowledge receipt of the email and provide him with updates on the project’s progress in writing. When Robinson failed to respond to the Chiefs email as requested, Chief Sturm sent a written reprimand to Robinson on December 15, 2010, for Robinson’s failure to follow directives.
| ^Thereafter, on February 2, 2011, Chief Sturm again forwarded his December 14, 2010 email to Robinson, noting that as of that date, Robinson had still not followed direction nor taken charge of the transfer of evidence. On March 1, 2011, Chief Sturm sent another letter to Robinson, detailing Robinson’s insubordination for failing to begin the audit and transfer process after being given a direct order. Robinson was also, at that time, relieved of his evidence room duties and was warned that if he failed to have new locks installed and obtain new alarm codes for the evidence room, he would be met with harsh discipline. Despite these repeated requests and warning, Chief Sturm stated that Robinson still failed to complete the task assigned. Consequently, on March 15, 2011, Chief Sturm wrote a letter to the Vice President for Student Affairs at ULL requesting a five-day suspension of Robinson for his failure to follow through on direct orders given by Chief Sturm on December 14, 2010, and March 1, 2011, and his repeated insubordination. According to Chief Sturm, Robinson had failed to do what he had been asked since December 2010, and the action taken against Robinson was an effort to improve his behavior.
Chief Sturm stated that ultimately, no action was ever taken against Robinson because he indicted his intent to retire in a March 2011 meeting with Hamilton. Following Robinson’s completion of retirement paperwork on May 9, 2011, Chief Sturm stated that he initiated an internal affairs investigation on May 12, 2011, after discovering that Robinson was in possession of evidence after being relieved of that responsibility, that he was improperly *521 storing evidence in his office, and that an item of evidence, an iPhone, was missing. The investigation, conducted by Lieutenant Louviere, found substantiated conduct for unsatisfactory performance.
Thereafter, Chief Sturm stated that he transferred Robinson to NIRC in June 2011, because he needed an administrative position there. Despite the transfer, 11sRobinson retained the same rank and pay. Chief Sturm stated that there are other veteran/senior officers working at NIRC, and the transfer was not intended as a punishment.
Pretext for Discrimination
Robinson asserts that the defendant’s proffered legitimate, nondiscriminatory reasons were merely pretextual for several reasons. First, with regard to the voluntary nature of his retirement, Robinson stated that while he spoke with Hamilton in March 2011 and inquired as to whether he had enough years to retire, he did not indicate to her at that time that he wanted to retire. Rather, according to Robinson, he had planned on working for at least three more years due to recent family financial issues. Lieutenant Brous-sard also stated that she was aware that Robinson planned on working for several more years. However, due to the progressive elimination of job responsibilities, harassment, and exclusion of Robinson by Chief Sturm as detailed above, Robinson felt he that he was forced to retire as soon as he had his forty years on July 15, 2011.
Further, with regard to the defendant’s argument that any adverse employment action was not because of Robinson’s age but was because of his insubordination, defendant argued that because Chief Sturm had recently promoted Robinson, he would not turn around and take adverse action against him because of his age. However, contrary to defendant’s assertion, Robinson presented evidence that Robinson’s promotion to Major was not so much based on merit or choice by Chief Sturm but was the result of a department wide reorganization at ULLPD to conform with the state civil service requirements. As such, the reallocation was not particular to Robinson but was applicable to all employees within ULLPD, each receiving an increase in rank and pay as part of the reorganization. Further, while the position of Major may have been created by the 1 ^reorganization, Robinson’s status as second-in-command and, according to Robinson, general job responsibilities remained the same.
Additionally, with regard to the issue of auditing and transfer of evidence, Robinson presented contradictory evidence as to what prompted the request for the detailed audit procedure, the reasonableness thereof, and whether such request and/or criticism was an effort to mandate compliance with departmental policy or an effort to build a file on Robinson and force him to leave ULLPD. Contrary to Chief Sturm’s assertion, Sergeant Mendoza testified that he did not tell Chief Sturm that Robinson was going to throw away evidence. Rather, Sergeant Mendoza stated that he expressed his concern to Chief Sturm that some evidence was missing from bags and that he did not want to be held accountable for missing evidence or held responsible for the condition of the evidence room.
Further, Chief Sturm acknowledged in his testimony that he was aware of the deplorable condition of the evidence room, where paint was peeling off the walls and evidence and paper were strewn everywhere Additionally, the testimony at trial indicated that the presence of rats in the evidence room, who ate through evidence bags and sometimes ate evidence, was widely known by officers at ULLPD. Chief Sturm acknowledged that despite this con *522 dition, ULLPD had never had a problem producing evidence when requested.
Following Chief Sturm’s email to Robinson on December 14, 2010, directing Robinson to perform a detailed audit of the evidence room contents and to email confirmation of the request and status updates, Robinson stated that he went to speak with Chief Sturm. Robinson stated that he explained to Chief Sturm that he was having problems with his email and that he did not know how to perform the audit as requested, and he also asked for assistance. Despite the fact that no one at ULLPD had been asked to perform or had performed such an evidence audit, Robinson stated Chief Sturm responded by just looking at him, [^raising his voice, and denying any request for training or assistance. Furthermore, Robinson stated that Chief Sturm refused requests for equipment to facilitate the transfer of evidence.
Additionally, despite Chief Sturm’s timetable and directive in December 2010 requiring that no evidence be moved to the new location prior to completion of the audit, Captain Zerangue testified that he helped Officer Abrams transfer the evidence from the old evidence room to its new location in December 2010, stating that they had to quickly get the evidence out of the old evidence room due to construction in the building and that they moved the evidence to the new facility in one day. Additionally, Captain Zerangue stated that the auditing process had taken in excess of two years to complete and was still ongoing at the time of trial. Further, Officer Mendoza and Captain Zerangue also stated that at the time the evidence was moved in December 2010, they, along with Officer Abrams and several student officers, were in charge of the move and that Robinson had been already been relieved of his evidence custodian duties.
Finally, with regard to the internal affairs investigation and the transfer of Robinson to NIRC, both of which occurred after Robinson elected to retire, Lieutenant Louviere testified that during the course of the investigation, he remembered that he and Robinson had previously returned the alleged “missing” iPhone to its owner. Further, despite Chief Sturm’s assertion that Robinson’s transfer to NIRC was not intended as a punishment, Lieutenant Broussard, Officer Mendoza, and Sergeant Johnson stated they, as well as other lower ranking officers, perceived the transfer as a punishment.
After viewing the record in its entirety, we find that the jury had conflicting evidence before it and apparently did not find credible defendant’s explanation that Robinson voluntarily retired or that any adverse employment action taken against him was due to his insubordination. Accordingly, because the jury, with its ability 1lfito listen to live testimony, was in a better position to judge the credibility of the witnesses and the accounts of the events, we will not second guess their rejection of the defendant’s proffered explanation. See Russell v. McKinney Hospital Venture, 235 F.3d 219, 225 (5th Cir. 2000).
Further, finding no error in the jury’s rejection of defendant’s proffered explanation, and considering the evidence offered by Robinson in support of his prima facie case, we find that a rational factfinder could conclude that the action was discriminatory and therefore, find no error in the jury’s inference of discrimination by ULLPD on the basis of age. See Reeves, 530 U.S. at 147-148, 120 S.Ct. at 2108-2109.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to the Board of *523 Supervisors for the University of Louisiana System.
AFFIRMED.
Chutz, dissents and assigns reasons.

. It is undisputed that at the time Robinson was hired, before it was renamed in 1999, ULL was known as the University of Southwest Louisiana.

. The salient difference between the two policing approaches is the focus on exchanges of information with other law enforcement agencies. According to Chief Sturm, in an intelligence-led policing approach there is daily interaction with other law enforcement agencies. He explained the rationale behind intelligence-led policing is that when a specific crime is committed in one area, the exchange of that knowledge between agencies averts the crime from occurring in another area.

. Robinson alleged that he filed his petition after having received a "[r]ight to sue” letter from the U.S. Equal Employment Opportunity Commission. (R-10) A breach of contract claim against the Board of Supervisors and Chief Sturm as well as a claim for age-based employment discrimination against Chief Sturm in his individual capacity were volun- . tarily dismissed.